BPS CLINICAL LABORATORIES v BLUE CROSS AND BLUE SHIELD OF
MICHIGAN (ON REMAND)

Docket Nos. 187107, 187108, 187109. Submitted July 6, 1995, at Lansing.
Decided July 26, 1996, at 9:00 A.M.

BPS Clinical Laboratories and others brought an action in the Wayne
Circuit Court against Blue Cross and Blue Shield of Michigan, alleg-
ing that the defendant wrongfully denied them the opportunity to
participate as panel providers in the defendant's new health care
program, Premier Prudent Laboratory Use Program (Premier Plus),
part of a General Motors Corporation self-funded employee benefit
plan managed by Blue Cross under an administrative services only
contract. The plaintiffs alleged a violation of the Nonprofit Health
Care Corporation Reform Act, MCL 500.1101 *et seq.*; MSA
24.660(101) *et seq.*, and also sought mandamus relief ordering the
defendant to comply with the Prudent Purchaser Act (PPA), MCL
550.51 *et seq.*; MSA 24.650(51) *et seq.* The plaintiffs also claimed the
plan constituted a breach of contract, resulted in a tortious inter-
ference with a business relationship, and violated the Antitrust
Reform Act, MCL 445.772; MSA 28.70(2). The defendant claimed
that the plaintiffs' claims were preempted by the federal Employee
Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.* The
case was consolidated with another case in the circuit court. The
circuit court, Richard C. Kaufman, J., granted summary disposition
for the defendants, except with regard to the allegations regarding
violation of the PPA. The parties appealed. The appeals were consol-
idated and the Court of Appeals, MICHAEL J. KELLY and W. J.
CAPRATHE, JJ. (WHITE, P.J., concurring in part and dissenting in part),
affirmed in part and reversed in part, holding that the ERISA pre-
empted the plaintiffs' state claims. 206 Mich App 570 (1994). The
Supreme Court, in lieu of granting leave to appeal, remanded the
case to the Court of Appeals for reconsideration in light of *New
York State Conference of Blue Cross & Blue Shield Plans v Trav-
elers Ins Co*, 514 US ___; 115 S Ct 1671; 131 L Ed 2d 695 (1995). 449
Mich 860 (1995).

On remand, the Court of Appeals *held*:

1. The ERISA does not preempt the plaintiffs' claims under state
law.

2. In *New York Blue Cross, supra,* the Supreme Court held that the basic thrust of the ERISA's preemption clause was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans. State laws that force an ERISA plan administrator to modify a benefit plan in order to comply with the laws of a specific state violate the ERISA. The PPA does not preclude the nationally uniform administration of employee benefit plans. The PPA permits certain organizations to voluntarily enter into prudent purchaser agreements with health care providers to control health care costs. Because the PPA does not mandate that any party enter into a prudent purchaser agreement, the PPA is not preempted by the ERISA. The plaintiffs' claims pursuant to the PPA are not preempted by the ERISA.

3. The plaintiffs claims under the Nonprofit Health Care Corporation Reform Act are not preempted by the ERISA. Requiring the defendant to comply with the requirements of the Nonprofit Health Care Corporation Reform Act, its enabling legislation, does not preclude the nationally uniform administration of benefit plans. Because Congress did not intend to preempt state law where no federal regulation exists to replace it, none of the plaintiffs' claims are preempted, by the ERISA.

4. The trial court did not err in granting defendant's motion for summary disposition of the plaintiffs' claim of a violation of the Nonprofit Health Care Corporation Reform Act. The act does not grant a health care provider the right to sue a health care corporation directly. The plaintiffs may commence an action in the Ingham Circuit Court, pursuant to MCL 550.1619(3); MSA 24.660(619)(3), to compel the Insurance Commissioner to enforce the act.

5. The trial court properly dismissed the plaintiffs' claim of tortious interference with a business relationship. Because the defendant established Premier Plus for a legitimate business purpose, the plaintiffs' claim was without merit.

6. The trial court properly granted summary disposition for the defendant of the plaintiffs' claim of antitrust violations. Because the defendant created Premier Plus with the intent of reducing the cost of health care and the plan was permitted by the Insurance Commissioner, the trial court did not err in dismissing the antitrust claim. In addition, because the defendant was authorized to enter into prudent purchaser agreements by state law, Premier Plus did not violate the Antitrust Reform Act, MCL 445.774(4); MSA 28.70(4)(4).

7. A trial court may grant summary disposition of a breach of contract claim only if the terms of the contract are not subject to two or more reasonable interpretations. Because the terms of the

physician participation contract here are subject to two or more reasonable interpretations, the trial court erred in granting the defendant's motion for summary disposition of the claim of breach of the physician participation contract.

8. The trial court erred in determining that the plaintiffs could maintain an action directly against the defendant to enforce the provisions of the Prudent Purchaser Act. The plaintiffs may file an action pursuant to MCL 550.1619(3); MSA 24.660(619)(3) in the Ingham Circuit Court to compel the Insurance Commissioner to enforce the Prudent Purchaser Act.

Affirmed in part, reversed in part, and remanded.

1. CONFLICT OF LAWS — PREEMPTION — EMPLOYEE BENEFIT PLANS— EMPLOYEE RETIREMENT INCOME SECURITY ACT.

The federal Employee Retirement Income Security Act provides that it shall supersede any and all state laws insofar as they relate to any employee benefit plan; the basic thrust of the preemption clause of the act is to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans; state laws that force an ERISA plan administrator to modify a benefit plan in order to comply with the laws of a specific state violate the ERISA (29 USC 1144[a]).

2. CONFLICT OF LAWS — PREEMPTION — EMPLOYEE BENEFIT PLANS— PRUDENT PURCHASER ACT — EMPLOYEE RETIREMENT INCOME SECURITY ACT.

The Prudent Purchaser Act does not preclude the nationally uniform administration of employee benefit plans and is not preempted by the federal Employee Retirement Income Security Act (29 USC 1144[a]; MCL 550.51 *et seq.*; MSA 24.650[51] *et seq.*).

3. CONFLICT OF LAWS — PREEMPTION — NONPROFIT HEALTH CARE CORPORATION REFORM ACT — EMPLOYEE RETIREMENT INCOME SECURITY ACT.

Requiring Blue Cross and Blue Shield of Michigan to comply with the requirements of its enabling legislation, the Nonprofit Health Care Corporation Reform Act, does not preclude the nationally uniform administration of benefit plans; health care providers' claims under the Nonprofit Health Care Corporation Reform Act are not preempted by the federal Employee Retirement Income Security Act (29 USC 1144[a]; MCL 550.1101 *et seq.*; MSA 24.660(101) *et seq.*).

4. ACTIONS — NONPROFIT HEALTH CARE CORPORATION REFORM ACT.

The Nonprofit Health Care Corporation Reform Act does not grant a health care provider the right to sue a health care corporation directly; only the Attorney General and the Insurance Commissioner are entitled to enforce the act directly against a health care corporation; a person seeking to compel compliance with, or

enforcement of, the act may bring an action in the Ingham Circuit Court to compel the Insurance Commissioner to enforce the act (MCL 550.1619[2],[3]; MSA 24.660[619][2],[3]).

5. Torts — Interference With Business Relationship — Elements.

The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff; to establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference; where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference.

6. Monopolies — Antitrust Reform Act — Health Care Corporations.

The Antitrust Reform Act prohibits a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce; the act does not apply to a transaction by a health care corporation if the health care corporation engages in the challenged transaction to reduce the cost of health care and the transaction is approved by the Insurance Commissioner; the act does not apply to a transaction or conduct authorized by state law (MCL 445.772, 445.774[4],[6]; MSA 28.70[2], 28.70[4][4],[6]).

7. Motions and Orders — Summary Disposition — Breach of Contract.

A trial court may grant summary disposition of a breach of contract claim only if the terms of the contract are not subject to two or more reasonable interpretations.

8. Actions — Prudent Purchaser Act — Nonprofit Health Care Corporation Reform Act.

Only the Attorney General and the Insurance Commissioner may enforce the Prudent Purchaser Act by a direct action against a health care corporation; a person may file an action in the Ingham Circuit Court under the Nonprofit Health Care Corporation Reform Act to compel the Insurance Commissioner to enforce the Prudent Purchaser Act (MCL 550.1101 *et seq.*, 550.1619[2],[3]; MSA 24.660 [101] *et seq.*, 24.660[619][2],[3]).

*Feikens, Vander Male, Stevens, Bellamy & Gilchrist, P.C.* (by *Alan G. Gilchrist* and *Keith J. Soltis*), for the plaintiffs.

*Richard John Mathews,* for the defendant.

Amicus Curiae:

*Kerr, Russell & Weber* (by *Richard D. Weber* and *Joanne Geha Swanson*), for Michigan State Medical Society.

ON REMAND

Before: DOCTOROFF, C.J., and MICHAEL J. KELLY and WHITE, JJ.

PER CURIAM. We consider this case on remand from our Supreme Court for reconsideration in light of *New York State Conference of Blue Cross & Blue Shield Plans* v *Travelers Ins Co,* 514 US ___; 115 S Ct 1671; 131 L Ed 2d 695 (1995). 449 Mich 860 (1995). We affirm in part and reverse in part.

In *BPS Clinical Laboratories v Blue Cross & Blue Shield of Michigan,* 206 Mich App 570; 522 NW2d 902 (1994), we considered plaintiffs' claims that defendant wrongfully denied them the opportunity to participate in its new health care program in violation of state law. We held that plaintiffs' claims were preempted by the federal Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.* After the publication of our case, the United States Supreme Court decided *New York Blue Cross, supra.* In light of *New York Blue Cross,* we repudiate our prior decision and hold that the ERISA does not preempt plaintiffs' claims under state law.

I

This case involves defendant's Premier Prudent Laboratory Use Program (Premier Plus), which

defendant administers for General Motors Corporation under an "administrative services only" contract. This contract requires General Motors to pay defendant a fee for administering the program and reimburse defendant for all covered health care charges paid by defendant on behalf of program enrollees. Defendant does not function as an insurer for program enrollees.

Under Premier Plus, defendant created a panel of six provider laboratories that agreed to discount the rate for laboratory services. Physicians who referred laboratory services to the provider laboratories would receive a $3 blood-handling fee from defendant. Physicians who referred specimens to nonpanel laboratories would not receive the fee. While the panel of provider laboratories would receive the full discounted rate from defendant, nonpanel laboratories would only receive fifty percent of the maximum payment scheduled.

Plaintiffs are health care providers excluded from full reimbursement under Premier Plus. Plaintiffs filed two different suits, claiming several violations of state law. First, plaintiffs alleged that Premier Plus violated the Michigan Nonprofit Health Care Corporation Reform Act (Act 350). MCL 550.1101 *et seq.*; MSA 24.660(101) *et seq.* Second, plaintiffs argued for mandamus relief ordering defendant to comply with the Prudent Purchaser Act (PPA), MCL 550.51 *et seq.*; MSA 24.650(51) *et seq.* Third, plaintiffs claimed that the plan constituted a breach of contract. Fourth, plaintiffs maintained that the creation of Premier Plus resulted in a tortious interference with a business relationship. Fifth, plaintiffs alleged that Premier Plus violated § 2 of the Michigan Antitrust Reform Act.

MCL 445.772; MSA 28.70(2). Defendant maintained that plaintiffs' claims were preempted by the ERISA.

Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). The trial court granted defendant's motion for summary disposition of all of plaintiffs' claims except for the alleged violation of the PPA. In *BPS Labs v Blue Cross, supra,* we affirmed in part and reversed in part, holding that the ERISA preempted plaintiffs' state claims.

## II

Section 514(a) of the ERISA provides that the ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan." 29 USC 1144(a). In *New York Blue Cross, supra,* the United States Supreme Court stated that the term "relate to" was so vague as to be meaningless. The Supreme Court held that the basic thrust of the ERISA's preemption clause was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans. State laws that force an ERISA plan administrator to modify a benefit plan in order to comply with the laws of a specific state would violate the ERISA. *Id.* at 131 L Ed 2d 706.

The PPA does not preclude the nationally uniform administration of employee benefit plans. The PPA was enacted to address the problem of rising health care costs in Michigan. The drafters of this legislation determined that few incentives existed in the health care marketplace to contain costs. In an attempt to encourage insurance companies and nonprofit health care corporations to contain costs, the PPA permits these organizations to enter into prudent purchaser agreements with a limited number of health care

providers selected on the basis of cost of services and quality of care. These organizations could then encourage or require consumers to utilize the selected health care providers. House Legislative Analysis Section, HB 4798-4801, 5067-5069 (January 12, 1984).

The PPA permits certain organizations to *voluntarily* enter into prudent purchaser agreements with health care providers to control health care costs. MCL 550.53(1); MSA 24.650(53)(1). Because the PPA does not mandate that any party enter into a prudent purchaser agreement, we hold that the Prudent Purchaser Act, MCL 550.51 *et seq.*; MSA 24.650(51) *et seq.*, is not preempted by the ERISA. When a state passes a law that requires all employee benefit plans to pay pregnancy-related benefits to employees, then a benefit provider must alter the plan to comply with a specific state law. *Shaw v Delta Air Lines, Inc*, 463 US 85, 97; 103 S Ct 2890; 77 L Ed 2d 490 (1983). Similarly, when a state mandates that an employee benefit plan provide minimum mental health coverage, then a plan administrator must modify the plan or violate state law. *Metropolitan Life Ins Co v Massachusetts*, 471 US 724, 740; 105 S Ct 2380; 85 L Ed 2d 728 (1985). In those cases, the ERISA preemption permitted the nationally uniform administration of employee benefit plans. However, we fail to see how a statute that applies only to those who choose to fall within its purview could preclude the nationally uniform administration of employee benefit plans. Unlike *Shaw* and *Metropolitan Life*, the PPA did not mandate any change in health care coverage or the administration of benefits. The act only imposed certain requirements once defendant chose to form prudent pur-

chaser agreements. Because we find that the PPA does not preclude the nationally uniform administration of employee benefit plans, we hold that plaintiffs' claims pursuant to the PPA are not preempted by the ERISA.

We also hold that the ERISA does not preempt plaintiffs' claims under Act 350. MCL 550.1101 *et seq.*; MSA 24.660(101) *et seq.* Plaintiffs alleged that defendant violated Act 350 by (1) failing to submit a revised certificate to the Insurance Commissioner for rate approval of Premier Plus, (2) failing to submit a list defining the provider class plans to the Insurance Commissioner, and (3) using money to induce referring physicians to work with panel laboratories. Defendant argued that the ERISA preempted the procedural requirements of Act 350 because the imposition of these requirements would preclude the nationally uniform administration of employee benefit plans.

Act 350 is the enabling legislation for defendant. The primary purpose of the original act was to promote a wider distribution of medical care to those people who otherwise did not have the financial resources to obtain health care services. The secondary purpose was to protect the public from fraud by placing the health care corporations charged with administering the plans under the regulatory authority of the Insurance Commissioner. Act 350 modified the earlier enabling legislation so that the Insurance Commissioner would possess the power to require specific cost-containment procedures. Defendant participated in the development of the legislation. *Blue Cross & Blue Shield of Michigan v Governor*, 422 Mich 1, 14-17; 367 NW2d 1 (1985). Act 350 provides that a health care corporation shall offer health care benefits to all residents of the state who apply for

such benefits. MCL 550.1202(1)(d); MSA 24.660(202) (1)(d), MCL 550.1401(1); MSA 24.660(401)(1).

Requiring defendant to comply with the requirements of its enabling legislation does not preclude the nationally uniform administration of benefit plans.[1] Defendant asks this Court to cast off the procedural requirements of its enabling legislation because they add a burden to its administration of health care plans but to retain its exemptions from state tax and corporation law. Taking defendant's argument to its logical conclusion, the state would lose any ability to regulate defendant at all. As the Supreme Court stated in *New York Blue Cross, supra:*

> While Congress's extension of pre-emption to all "state laws relating to benefit plans" was meant to. sweep more broadly than "state laws dealing with the subject matters covered by ERISA[,] reporting, disclosure, fiduciary responsibility, and the like," nothing in the language of the Act or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern. [*Id.* at 131 L Ed 2d 709 (citation omitted).]

The fact that the ERISA does not address the relationship of a benefit plan with health care providers supports our conclusion. Because we do not agree that Congress intended to preempt state law where no federal regulation exists to replace it, we find that none of plaintiffs' claims are preempted by the ERISA. *Int'l Resources, Inc v New York Life Ins Co,* 950 F2d 294, 298 (CA 6, 1991). The ERISA was enacted to protect the pension funds of employees and benefi-

---

[1] The plan's self-insured status has no effect on our analysis. *Travelers Ins Co v Pataki,* 63 F3d 89, 93 (CA 2, 1995).

ciaries. The stated policy of the ERISA is "to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries." 29 USC 1001(b). While participants, fiduciaries, beneficiaries, or government entities are entitled to file a civil action under the ERISA, health care providers under contract with a plan administrator have no standing to file a civil action. 29 USC 1132.

As the Court of Appeals for the Eleventh Circuit stated in *Lordmann Enterprises, Inc v Equicor, Inc*, 32 F3d 1529, 1533 (CA 11, 1994):

> Preemption in a third-party health care provider case would defeat rather than promote this goal. The "commercial realities" of the health care industry require that health care providers be able to rely on insurers' representations as to coverage. . . . If ERISA preempts their potential causes of action for misrepresentation, health care providers can no longer rely as freely and must either deny care or raise fees to protect themselves against the risk of noncoverage. In that event, the employees whom Congress sought to protect would find medical treatment more difficult to obtain.

III

Having determined that the ERISA does not preempt plaintiffs' claims, we now address the trial court's disposition of the case. The trial court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(8) and (10) of all of plaintiffs' claims except for the claimed violation of the PPA. MCL 550.51 *et seq.*; MSA 24.650(51) *et seq.* The trial court determined that defendant had violated the PPA. We review de novo a trial court's grant or denial of a motion for summary disposition. *Thomas v State Bd*

*of Law Examiners*, 210 Mich App 279, 280; 533 NW2d 3 (1995).

First, we find that the trial court did not err in granting defendant's motion for summary disposition of plaintiffs' claim of a violation of Act 350. The trial court correctly held that Act 350 does not grant a health care provider the right to sue a health care corporation directly. Only the Attorney General and the Insurance Commissioner are entitled to enforce the act directly against a health care corporation. MCL 550.1619(2), (3); MSA 24.660(619)(2),(3). Additionally, a person seeking to compel compliance with, or enforcement of, the act has a right to bring an action in the Ingham Circuit Court to compel the commissioner to enforce the act. MCL 550.1619(3); MSA 24.660(619)(3). The only private right of action directly against a health care corporation authorized by the act is an action by a subscriber against a health care corporation for damages. MCL 550.1402(11); MSA 24.660(402)(11). Because this statute only explicitly allows a private right of action by a subscriber, we conclude that no other private rights of action directly against a health care corporation are authorized. See *Williams v Coleman*, 194 Mich App 606, 613; 488 NW2d 464 (1992). The relief sought by plaintiffs regarding the enforcement of Act 350 is available through the procedure set forth in MCL 550.1619(3); MSA 24.660(619)(3). Plaintiffs may commence an action in the Ingham Circuit Court to compel the Insurance Commissioner to enforce the act.

Next, we find that the trial court properly dismissed plaintiffs' claim of tortious interference with a business relationship. The elements of tortious interference with a business relationship are the existence

of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff. *Lakeshore Community Hosp v Perry*, 212 Mich App 396, 401; 538 NW2d 24 (1995). To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference. *Feldman v Green*, 138 Mich App 360, 369; 360 NW2d 881 (1984). Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference. *Michigan Podiatric Medical Ass'n v Nat'l Foot Care Program, Inc*, 175 Mich App 723, 736; 438 NW2d 349 (1989). Because we agree with the trial court that defendant established Premier Plus for a legitimate business purpose, plaintiffs' claim of tortious interference with a business relationship was without merit.

Third, we affirm the trial court's grant of defendant's motion for summary disposition of plaintiffs' claim of antitrust violations. The Antitrust Reform Act prohibits a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce. MCL 445.772; MSA 28.70(2). However, this act does not apply if a health care corporation engages in the challenged transaction to reduce the cost of health care and the transaction is approved by the commissioner. MCL 445.774(6); MSA 28.70(4)(6). Although the Insurance Commissioner did not approve the plan at the time

that this suit was filed, the commissioner did not reject the plan either. Because defendant did create Premier Plus with the intent of reducing the cost of health care and the plan was permitted by the Insurance Commissioner, the trial court did not err in dismissing plaintiffs' antitrust claim.[2]

Furthermore, we find that the trial court could have dismissed plaintiffs' antitrust claim under another statutory exclusion. Subsection 4(4) of the Antitrust Reform Act, MCL 445.774(4); MSA 28.70(4)(4), states:

> This act shall not apply to a transaction or conduct specifically authorized under the laws of this state or the United States, or specifically authorized under laws, rules, regulations, or orders administered, promulgated, or issued by a regulatory agency, board, or officer acting under statutory authority of this state or the United States.

Because defendant was authorized to enter into prudent purchaser agreements by state law, MCL 550.51 *et seq.*; MSA 24.650(51) *et seq.*, Premier Plus did not violate the Antitrust Reform Act.

Fourth, plaintiffs maintain that the trial court erred in granting summary disposition of their breach of contract claim. A trial court may grant summary disposition of a breach of contract claim only if the terms of the contract are not subject to two or more reasonable interpretations. *SSC Associates Limited Partnership v General Retirement System of the City of Detroit*, 192 Mich App 360, 363; 480 NW2d 275 (1991).

We find that the terms of the contract are subject to two or more reasonable interpretations. Plaintiffs

---

[2] The Insurance Commissioner approved the plan on March 19, 1992.

allege that defendant breached its physician participation agreements when Premier Plus enacted a $3 blood-processing fee payable to physicians who use panel laboratories but not payable to those physicians who use nonpanel laboratories. Previously, physicians performing their own blood processing and those that used any laboratory for blood processing were entitled to the $3 fee. Defendant argues that the physician participation agreements state only that health care providers will be reimbursed for covered services. According to defendant, Premier Plus merely changes the types of services that are covered. Plaintiffs maintain that, rather than changing the covered services, Premier Plus modified the reimbursement schedule in the physician participation agreement. The trial court agreed with defendant, stating that Premier Plus changed the covered services and not the reimbursement schedule.

Although we acknowledge that this is a possible interpretation of the contract, we find that the terms of the physician's contract could be subject to another reasonable interpretation. Defendant's physician participation agreement states that "for each covered service performed, BCBSM will pay the lesser of billed charges or the published maximum screen as set forth in BCBSM's Maximum Payment Schedule." The description of Premier Plus issued by Blue Cross states, under "Types of Services Covered," that "[t]he range of laboratory services eligible for reimbursement from BCBSM will be the same under this program as they are under the existing laboratory benefit package." Rather than eliminate payments to non-selected laboratories from coverage, Premier Plus uses financial incentives to encourage physicians to

use the selected laboratories. Therefore, the determination that physicians would not receive the $3 blood-processing fee could be construed as a modification of the reimbursement schedule rather than a change in covered services. Because more than one reasonable interpretation of the physician participation contract exists, we find that the trial court erred in granting defendant's motion for summary disposition of the claim of breach of the physician participation contract.[3]

Fifth, the trial court determined that plaintiffs had a private cause of action under the Prudent Purchaser Act. MCL 550.51 *et seq.*; MSA 24.650(51) *et seq.* Unlike Act 350, which states that the Attorney General or the Insurance Commissioner may file suit to enforce the act, and that any person may bring an action in the Ingham Circuit Court to compel the commissioner to enforce the act, the PPA does not expressly authorize any enforcement action. The trial court determined that the absence of any enforcement provision indicated that a private party could sue in equity to enforce the provisions of the PPA. We hold that the trial court erred in determining that plaintiffs could maintain an action directly against the health care corporation to enforce the provisions of the PPA.

---

[3] Although there is no explicit claim on this basis in the initial complaint, plaintiffs now allege that defendant breached its laboratory participation agreements to reimburse for covered services when it determined that Premier Plus authorized full reimbursement for panel laboratories while only authorizing fifty percent reimbursement for the use of a nonpanel laboratory. Unlike the physician participation agreements, this contract provides that defendant can change the reimbursement policies as it wishes as long as it provides sixty days' written notice to the provider laboratories.

Statutes that share a common purpose are in pari materia and must be read together as one law. *Jennings v Southwood*, 446 Mich 125, 137; 521 NW2d 230 (1994). Act 350 contains the authorization for defendant to enter into prudent purchaser agreements. MCL 550.1502a; MSA 24.660(502a). The PPA also states that an organization that provides or administers health care benefits or coverage under a prudent purchaser agreement shall remain subject to all of the provisions of its enabling act. MCL 550.58; MSA 24.650(58). Because each statute has language incorporating the other statute, we read these statutes in pari materia. Applying the restrictions on enforcement in Act 350 to the PPA, only the Attorney General and the Insurance Commissioner are entitled to enforce the PPA by a direct action against a health care corporation. Therefore, we hold that the trial court erred in determining that plaintiffs had a private right of action directly against the health care corporation under the PPA. The relief plaintiffs sought and obtained from the Wayne Circuit Court – a ruling that the PPA applied and an order enjoining implementation of the plan pending compliance with the PPA – is available through the procedure set forth in MCL 550.1619(3); MSA 24.660(619)(3). Plaintiffs are still free to file an action in the Ingham Circuit Court to compel the commissioner to enforce the act.

IV

In summary, we hold that plaintiffs' claims are not preempted by the ERISA. We affirm the trial court's grant of summary disposition dismissing plaintiffs' Act 350 claim, their claim of tortious interference with a business relationship, and their claim of a vio-

lation of the Michigan Antitrust Reform Act. MCL 445.772; MSA 28.70(2). We reverse the grant of summary disposition of plaintiffs' breach of contract claim because more than one reasonable interpretation of the physician participation contract could exist. We also reverse the trial court's grant of mandamus ordering defendant to comply with the PPA because the PPA does not authorize a private right of action directly against a health care corporation.[4] MCL 550.51 *et seq.*; MSA 24.650(51) *et seq.*

Affirmed in part and reversed in part. We remand for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[4] While Judge WHITE expressed a contrary view in her earlier opinion in this case, *BPS Labs v Blue Cross, supra* at 590, she is now convinced that the actions to compel compliance with the PPA should have been brought in the Ingham Circuit Court and should have been pleaded as actions to compel the Insurance Commissioner to enforce the act.