**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0749n.06
Filed: December 9, 2008

No. 07-2195

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AUREUS HOLDINGS, LTD. and DONALD SCHULTZ, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiffs-Appellants, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| DETROIT CITY and JAMES DOCKERY, | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | M E M O R A N D U M |
| and | ) | O P I N I O N |
| | ) | |
| DETROIT POLICE DEPARTMENT, | ) | |
| | ) | |
| Defendant. | ) | |

BEFORE: ROGERS, SUTTON and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** This case stems from something of a feud between Aureus

Holdings, Ltd., a scrap metal processor operating in the City of Detroit, and Detroit Police Officer

James Dockery, acting in his capacity as Environmental Enforcement Officer. Aggrieved by various

actions taken by Officer Dockery, plaintiffs Aureus and Donald Schultz, an Aureus employee,

brought suit in the Eastern District of Michigan, asserting various federal and state causes of action.

The district court granted defendants' motion for summary judgment in part, dismissing all claims

against the City, and conducted a five-day jury trial on Aureus's remaining claims against Dockery.

In trial, the district court awarded Dockery judgment as a matter of law on some claims and the jury returned a verdict in Dockery's favor on all remaining claims. The court subsequently denied Aureus's motion for new trial. On appeal, we find no error in the proceedings below and therefore affirm the district court's judgment.

**I**

Plaintiffs Aureus and Schultz raise several claims of error. We address them in the order presented. The first asserted error relates to Schultz's Count II claim under 42 U.S.C. § 1983 that his Fourth Amendment right to freedom from unreasonable seizures was violated when Dockery, without probable cause, temporarily seized his shotgun from the Aureus scrap yard office on or about September12, 2001. Schultz contends the jury's verdict is against the clear weight of the evidence and that the district court erred by denying his motion for new trial. The district court denied relief because the evidence of the circumstances surrounding the seizure of the shotgun was controverted and the jury was entitled to accept Dockery's version of the events rather than Schultz's. The court thus ruled that Schultz had failed to establish by a preponderance of the evidence that the seizure violated his Fourth Amendment rights.

We review the district court's denial of new trial for abuse of discretion. *Taylor v. Teco Barge Line, Inc.*, 517 F.3d 372, 383 (6th Cir. 2008). The trial court will be deemed to have abused its discretion if the challenged verdict is so contrary to the clear weight of the evidence that a reasonable juror could not have reached it. *Id.*

Schultz maintains that even accepting Dockery's version of the events, probable cause to seize the shotgun was not established. Schultz argues that even assuming he told Dockery he was

not in charge, and told Dockery that he owned the shotgun observed in plain view in the office but refused to produce personal identification, this does not amount to probable cause to believe an offense had been committed justifying seizure. Yet, Dockery explained that inasmuch as Schultz was uncooperative, claimed ownership of a shotgun displayed in the office of a business he claimed not to be in charge of, and refused to produce personal ID or proof of ownership, he was not comfortable, from a public safety perspective, leaving the loaded shotgun there. Dockery testified that he therefore invited Schultz to follow him to the police station where ownership could be verified and the shotgun could be returned to him. Schultz did so and, upon producing personal ID and admitting that he was in fact the manager of the Aureus facility, the shotgun was returned to him.

In light of this testimony, the jury, having been properly instructed on the law, was entitled to conclude that this temporary seizure was not so unreasonable as to violate Schultz's constitutional rights. The jury's verdict was not plainly unreasonable and the district court's denial of the motion for new trial was not an abuse of discretion.[1]

---

[1]For the same reasons, we find no abuse of discretion in the district court's refusal to instruct the jury on awarding punitive damages for this claim. *See Taylor*, 517 F.3d at 387 (district court's refusal to give requested instruction reviewed for abuse of discretion). The record does not contain evidence even suggesting that Dockery, in temporarily removing the shotgun, acted so maliciously, wantonly or oppressively as to justify award of punitive damages. *See Memphis Cmty. School Dist. v. Stachura*, 477 U.S. 299, 307 n. 9 (1986) (punitive damages are available in § 1983 case only for acts "maliciously, or wantonly, or oppressively done"). Moreover, even if the refusal to give a punitive damages instruction were in error, it was harmless inasmuch as the jury's verdict was in favor of Dockery.

**II**

In the second claim of error, Aureus and Schultz challenge the district court's denial of their motion for new trial on the Count III claim for malicious prosecution. Again, they contend the jury's verdict in favor of Dockery was against the clear weight of the evidence. The district court treated the claim as a state law claim (and so instructed the jury) and determined that plaintiffs' proofs failed to satisfy two essential elements of the claim. The court noted that plaintiffs had to prove they were subject to prosecution without probable cause, which prosecution terminated in their favor. *See Matthews v. Blue Cross & Blue Shield of Michigan*, 572 N.W.2d 603, 609-10 (Mich. 1998). Yet, of the numerous citations issued to Aureus and Schultz—for disposal of waste oil, dumping, operating without a certificate of occupancy, etc.—the court found evidence of the disposition of only nine. These nine were dismissed without prejudice pursuant to a stipulation that required Aureus to install storage tanks for the disposal of waste products. Reasoning that the jury was entitled to view this as evidence that the citations were issued with probable cause and that the proceedings were not terminated in plaintiffs' favor, the court concluded that the jury's verdict was not shown to be unreasonable. *See Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 363-64 (Mich. App. 2003) (where termination results from compromise or settlement, there is no "favorable termination" for purposes of malicious prosecution claim).

On appeal, Aureus and Schultz do not even address the district court's reasoning. Instead, they rehash their litany of grievances over petty harassments inflicted on them during this period. They do not identify a single prosecution, criminal or civil, that terminated in their favor. We are

not persuaded that the district court abused its discretion in denying the motion for new trial on the Count III malicious prosecution claim.

**III**

In Count IV of the complaint, Aureus asserts a claim against Dockery for tortious interference with advantageous business relationship or expectancy. This claim is premised in part on the closure of the Aureus scrap yard operation from May 17, 2001 to June 13, 2001. Dockery issued a citation and ordered the business closed when he learned on May 17, 2001, that Aureus did not have a valid license to operate. Aureus applied for a license later on May 17 and was directed by the Department of Consumer Affairs to stay closed pending approval of the license application. It is undisputed that Aureus was without a valid license during this twenty-six-day period. Concluding that the closure was due to the undisputed lack of a license, not to any tortious interference by Dockery, the district court, during trial, precluded Aureus from seeking damages for profits lost during this period.

Aureus contends the district court erred as a matter of law. Citing the City of Detroit Ordinance, Aureus contends the City was obligated to ("shall") issue the license as soon as the application fee was paid, on May 17. Since the City was legally obligated to issue the license on May 17, Aureus argues Dockery lacked legal authority to enforce the closure after May 17. Dockery's continued enforcement of the closure without legal authority is thus said to constitute tortious interference with Aureus's business relations.

Even if we were to accept Aureus's questionable construction of the ordinance, its argument would still fall short. Even if the Department of Consumers Affairs ought to have issued Aureus a license on May 17, the fact is that it did not do so. The Department of Consumer Affairs took almost

four weeks to process the application before issuing the license. Although the closure undoubtedly visited hardship on Aureus, the City's alleged nonfeasance and Aureus's resultant loss cannot be attributed to Dockery under a tortious interference theory. To make out a valid claim for tortious interference under Michigan law, Aureus was required to show that Dockery acted without legal justification *and* with malice. *See Mino v. Clio School Dist.*, 661 N.W.2d 586, 597 (Mich. App. 2003); *BPS Clinical Labs. v. Blue Cross & Blue Shield of Michigan*, 552 N.W.2d 919, 925 (Mich. App. 1996). The fact that Aureus was actually without a license during the period of closure by express order of the Department of Consumer Affairs precluded a finding that Dockery's enforcement of the closure was with malice. We therefore find no error in the district court's order limiting the scope of Aureus's claim for tortious interference damages.

## IV

Insofar as the complaint set forth a claim under 42 U.S.C. § 1983 for denial of equal protection, the district court awarded judgment to Dockery as a matter of law for lack of evidence that Aureus and Schultz were treated differently from others similarly situated, citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Again, plaintiffs' appellate arguments are unresponsive to this identified deficiency. They failed to allege or show that they were discriminated against because of their membership in any suspect class and they have not pointed to evidence that they were treated less favorably than others similarly situated, such as would support a "class of one" equal protection claim. *See TriHealth, Inc. v. Board of Com'rs, Hamilton County, Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Accordingly, we find no error in the district court's ruling on the equal protection claim.

**V**

Counts V and VI of the complaint state claims against Dockery for intentional and negligent infliction of emotional distress. During trial, the district court awarded Dockery judgment as a matter of law on these claims as well. The court found the evidence of Dockery's conduct, "whatever the shortfalls," certainly insufficient to satisfy the "extreme and outrageous" element of the intentional infliction claim. Further, the court found the evidence insufficient to justify a reasonable jury finding that Dockery's enforcement excesses were the product of gross negligence, as would have been required to avoid the governmental immunity Dockery enjoyed under Mich. Comp. Laws § 691.1407(2).

On appeal, Schultz insists there was enough evidence to create a jury question. Under Michigan law, it is generally the trial court's duty to determine in the first instance whether a defendant's conduct may reasonably be regarded as "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. App. 2003) (quoting *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. App. 1999)). The trial court answered this question in the negative after hearing Schultz's entire testimony.

It appears Dockery may have performed his duties with excess zeal on occasion. Yet, while Schultz experienced anxiety as a result, he did not seek medical or mental health treatment, such as might support a finding that Dockery's conduct was truly extreme, atrocious and intolerable. Nor does the evidence suggest that Dockery's conduct could be fairly characterized as "reckless" or

"grossly negligent." In sum, Schultz has, in his appellate arguments, simply failed to draw our attention to any evidence that persuades us the district court erred in this respect.

**VI**

Finally, Aureus contends the district court erred, in its summary judgment ruling, when it dismissed all claims asserted against the City of Detroit. Aureus does not quarrel with the district court's conclusion that the only claim properly asserted against the City is contained in Count VII, which alleges, under 42 U.S.C. § 1983, that Aureus's business license was confiscated on December 20, 2002 without due process. However, the district court construed the claim against the City as logically flawed. Indeed, Aureus alleges that Dockery and others participated in the confiscation of the license in a manner violative of the City's own policies. Yet, as the district court noted, citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), to impose liability on the City under § 1983, Aureus must establish that City officials were acting pursuant to a City custom or policy.

We review the order granting summary judgment de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Johnson*, 398 F.3d at 873. Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact. *Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2005). A dispute is "genuine" only if based on evidence upon which a reasonable jury

could return a verdict in favor of the non-moving party. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). A factual dispute concerns a "material" fact only if its resolution might affect the outcome of the suit under the governing substantive law. *Id*.

Aureus acknowledges its burden to demonstrate that the alleged confiscation and non-renewal of its license were accomplished pursuant to City policy. To satisfy this burden, Aureus argues that, notwithstanding the City's official policies, which were allegedly ignored in this case, "the City, through its Department of Consumer Affairs, instituted a de facto policy of deliberate indifference in ignoring prescribed procedure in confiscating, then failing to renew, the business license of Aureus without due process of the law."

Granted, Aureus may establish municipal liability under § 1983 upon a showing that the City had "a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). To prevail on such a theory, however, Aureus must demonstrate, by a preponderance of the evidence, that: there was a clear and persistent pattern of illegal activity; the City had notice of it; the City tacitly approved the unconstitutional activity such that its deliberate indifference amounts to an official policy of inaction; and this custom or policy of inaction was the moving force behind the constitutional deprivation. *Id.* Yet, as the district court observed, Aureus has merely *argued* the existence of such a policy of inaction or "de facto policy" and has adduced no *evidence* of a pattern of similar activity. Such bald allegations are clearly insufficient to forestall summary judgment. We therefore find no error in the district court's award of summary judgment in favor of the City.

**VII**

For the foregoing reasons, we deny all of appellants' claims of error and **AFFIRM** the district court's judgment in all respects.