*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ENDOSCOPY CORPORATION OF AMERICA,

        Plaintiff-Appellant,

UNPUBLISHED
March 9, 2023

v

No. 359398
Oakland Circuit Court
LC No. 2020-182878-CB

HASSAN KENAAN,

        Defendant-Appellee.

Before: CAVANAGH, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

In this action arising from an employment contract dispute, plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant. On appeal, plaintiff argues that the trial court applied the wrong standard of review for deciding defendant's summary disposition motion pursuant to MCR 2.116(C)(8) (failure to state a claim), plaintiff's original complaint stated claims upon which relief could be granted, plaintiff's first amended complaint stated claims upon which relief could be granted, and the trial court erred when it granted summary disposition in favor of defendant when there was no pending motion for summary disposition and no hearing was held. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of plaintiff's allegations that defendant breached an employment contract between the parties by improperly retaining and using a trade secret after leaving his employment with plaintiff. As alleged in plaintiff's first amended complaint, plaintiff is in the business of repairing endoscopes, with a specific focus on repairing or replacing damaged circuit boards, known as "c-boards."[1] Defendant began working as a contractor for plaintiff in 2012, performing general information technology services. In March 2018, defendant became an employee of plaintiff and began focusing on repairing c-boards. At plaintiff's direction, defendant

---

[1] Because the trial court granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(8), we rely on the factual allegations made in plaintiff's first amended complaint.

developed processes to transfer data from damaged c-boards to new ones. Plaintiff directed defendant to document the processes he developed and to convey the information to plaintiff, but defendant never documented or conveyed to plaintiff how the processes worked. On July 21, 2020, the parties entered into a new employment contract, which included a noncompetition agreement and provisions regarding the ownership and handling of proprietary information, trade secrets, and intellectual property. On July 28, 2020, defendant resigned from his position with plaintiff. Thereafter, defendant refused to tell plaintiff how the processes worked or to turn over to plaintiff materials regarding the processes he had developed regarding data transfer between c-boards. On July 30, 2020, plaintiff, through counsel, sent a letter to defendant advising defendant that he still had to fulfill his obligations under the employment contract to turn over to plaintiff information and materials regarding the data transfer processes. Defendant did not comply with plaintiff's requests.

On August 12, 2020, plaintiff filed a four-count complaint against defendant, alleging breach of contract, tortious interference with a business expectancy, misappropriation of trade secrets, and unjust enrichment.[2] In lieu of filing an answer to plaintiff's complaint, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). Defendant argued that the employment contract between the parties was not enforceable after the employment ended, defendant had not interfered with a business expectancy of plaintiff, the processes he developed were not a trade secret and did not amount to intellectual property that could be owned, and plaintiff could not state a claim for unjust enrichment because the conduct at issue was covered by a valid contract. The trial court granted summary disposition in favor of defendant on all claims under MCR 2.116(C)(8), reasoning that plaintiff had not adequately pleaded any of its claims. However, the trial court's order allowed plaintiff to file a first amended complaint to cure the deficient pleadings of its breach of contract, tortious interference with a business expectancy, and misappropriation of a trade secret claims. The trial court dismissed plaintiff's unjust-enrichment claim with prejudice, finding that amendment would be futile in light of the valid contract between the parties governing the subject matter at issue.

Plaintiff filed a first amended complaint that also added defendant's company, Blue Leader, LLC, as a defendant. Defendant and Blue Leader, LLC, filed separate motions for summary disposition in lieu of filing answers. The trial court struck plaintiff's original first amended complaint because the addition of the new party violated the trial court's order allowing the amended complaint. Plaintiff filed a revised first amended complaint that complied with the order, and defendant again moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). The trial court entered an order scheduling a hearing on defendant's second motion for summary disposition for June 16, 2021, and ordering defendant to file a praecipe and notice of hearing. Instead of doing so, defendant re-noticed hearing on his motion for summary disposition for a date

---

[2] Plaintiff also filed an emergency motion for an ex parte temporary restraining order and preliminary injunction to enjoin defendant from using, disclosing, or destroying any of the alleged proprietary information defendant possessed and to compel defendant to turn over to plaintiff any information regarding the data transfer processes defendant developed. The trial court entered an order denying plaintiff's motion for a temporary restraining order and preliminary injunction without providing a rationale for its decision. Plaintiff does not appeal that order.

and time to be determined by the court, adding additional arguments. The case thereafter proceeded to case evaluation. On October 12, 2021, the trial court, without providing advance notice to the parties, entered an order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(8) on the basis of plaintiff's failure to cure the deficiencies in its original complaint. This appeal followed.

## II. STANDARD FOR DECIDING A MOTION BROUGHT PURSUANT TO MCR 2.116(C)(8)

Plaintiff argues that the trial court applied the wrong standard of review when it decided defendant's summary disposition motion brought pursuant to MCR 2.116(C)(8). We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). In *El-Khalil*, 504 Mich at 159-163, the Supreme Court explained the appropriate process for deciding a motion brought under MCR 2.116(C)(8). A defendant is entitled to summary disposition pursuant to MCR 2.116(C)(8) when the plaintiff fails to state a claim upon which relief can be granted. "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 160 (emphasis omitted). When considering a motion brought pursuant to MCR 2.116(C)(8), a trial court must decide the motion on the basis of the pleadings alone. *Id*. at 163. "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the plaintiff." *Wilson v King*, 298 Mich App 378, 381; 827 NW2d 203 (2012). A motion brought under MCR 2.116(C)(8) is properly granted when a plaintiff's claims are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maple Manor Rehab Ctr, LLC v Dep't of Treasury*, 333 Mich App 154, 162-163; 958 NW2d 894 (2020).

Under MCR 2.116(C)(8), it is outside the appropriate scope of review to consider whether a plaintiff has brought forth evidence to establish a claim, and the court cannot consider or weigh any evidence before it. *El-Khalil*, 504 Mich at 162. When a court is evaluating a motion brought pursuant to MCR 2.116(C)(8), it improperly considers the motion as one brought pursuant to MCR 2.116(C)(10) if it considers evidence when deciding the motion. *Id*. at 163-164. However, "[i]f a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading . . . ." MCR 2.113(C). Thus, "when an action is premised on a written contract, the contract generally must be attached to the complaint and thus becomes part of the pleadings." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 212; 933 NW2d 363 (2019).

From the trial court's orders, it does not appear that the court made or relied on findings of fact when it decided defendant's motions for summary disposition. Both orders acknowledged that defendant filed his summary disposition motions pursuant to both MCR 2.116(C)(8) and (10), and stated specifically that the court was granting the motions under MCR 2.116(C)(8) and not under MCR 2.116(C)(10). In the trial court's order deciding defendant's first motion for summary disposition regarding plaintiff's claims of breach of contract, tortious interference with a business expectancy, and misappropriation of a trade secret, the trial court only identified the absence of specific allegations relating to elements of each claim. Regarding the trial court's granting of summary disposition in favor of defendant on plaintiff's unjust-enrichment claim, the trial court's

-3-

decision was based on its conclusion that a valid contract existed between the parties on the subject matter of the dispute in this case. The interpretation of a contract is a question of law. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). The trial court did not err in its application of the standards set forth for deciding defendant's first motion brought pursuant to MCR 2.116(C)(8) and did not rely on facts outside the pleadings.

The trial court, likewise, did not rely on facts outside the pleadings when deciding defendant's second motion for summary disposition. In granting defendant's motion, the trial court's reasoning was that plaintiff had not cured the deficiencies in its complaint identified by the trial court in its order regarding defendant's first summary disposition motion, and the trial court did not identify any facts it may have relied upon. Without any indication of facts or factual findings relied upon by the trial court, it cannot be said that the trial court decided defendant's second summary disposition motion under the incorrect standard. Plaintiff is thus not entitled to relief regarding this issue.[3]

### III. SUMMARY DISPOSITION OF PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff argues that the trial court erred when it granted summary disposition in favor of defendant on all claims plaintiff brought in its original complaint. We agree that the trial court erred by dismissing plaintiff's claims of breach of contract and misappropriation of a trade secret, but we disagree that the trial court erred by dismissing plaintiff's claims of tortious interference with a business expectancy and unjust enrichment.

### A. BREACH OF CONTRACT

To state a claim for breach of contract, a plaintiff must allege that: "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "The primary goal of contract construction is to give effect to the parties' intent," and the terms of a contract are given their plain and ordinary meaning. *Total Quality, Inc v Fewless*, 332 Mich App 681, 694; 958 NW2d 294 (2020). When the language of a contract is not susceptible to more than one meaning, the contract is unambiguous and it "must be interpreted and enforced as written." *Id*. "Whether a contract is ambiguous is a question of law, while determining the meaning of ambiguous contract language becomes a question of fact." *Bodnar*, 327 Mich App at 220.

The first element of a breach-of-contract claim—that a contract exists—was successfully pleaded because defendant does not dispute on appeal that there was a valid employment contract between the parties. Regarding the second element—breach—plaintiff successfully pleaded this element because it identified a duty of defendant in the contract and alleged specific facts to

---

[3] Plaintiff briefly argued in its brief on appeal that defendant improperly attacked the enforceability of the contract in its motion for summary disposition. Courts presume the legality, validity, and enforceability of contracts. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 507; 741 NW2d 539 (2007). Plaintiff's argument does not affect the analysis. The trial court only ruled that plaintiff failed to identify a contractual duty breached by defendant and did not reach the issue of the contract's enforceability.

-4-

demonstrate defendant breached that duty. Plaintiff's original complaint referred to the contract's provision that defendant had the duty to convey and turn over to plaintiff all trade secrets and intellectual property that was either created or possessed by defendant throughout the course of his employment with plaintiff. Plaintiff alleged that defendant breached this duty by not complying with plaintiff's requests to turn over the confidential information and materials regarding the data transfer process created and possessed by defendant, which was a breach of defendant's contractual duties. Accordingly, plaintiff sufficiently alleged that defendant breached a duty under the employment contract.

The third element—that plaintiff suffered damages—was likewise successfully pleaded. Plaintiff alleged that, because of defendant's refusal to turn over the intellectual property, plaintiff was unable to fulfill customer requests and would be hindered in obtaining new business. Although the alleged hinderance of obtaining new business may be speculative, plaintiff's allegation that it was unable to fulfill existing contracts leads to the reasonable inference that plaintiff suffered financial losses. The pleadings are only required to put defendant on notice that he may be liable for damages that are the "direct, natural, and proximate result of the breach[.]" *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). Plaintiff successfully pleaded a claim of breach of contract, and the trial court erred when it granted summary disposition in favor of defendant on this claim.

Plaintiff also argues that defendant's position that an at-will employment contract cannot be breached lacks merit. In the trial court, but not on appeal, defendant argued that plaintiff had not explained or shown how defendant could have broken an at-will employment contract. As will be discussed in greater detail later, an employee can be bound by terms of an at-will employment contract after termination of employment, with one example being that noncompetition clauses, as was contained in the parties' employment contract, can be enforceable. *St Clair Med, PC v Borgiel*, 270 Mich App 260, 265-267; 715 NW2d 914 (2006). Defendant's argument in the trial court that he could not be bound to the terms of an at-will employment contract lacked merit.

B. TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

In *Health Call of Detroit v Atrium Home & Health Servs, Inc*, 268 Mich App 83, 90; 706 NW2d 843 (2005), this Court articulated the elements for succeeding on a claim of tortious interference with a business expectancy:

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

Regarding the first and second elements, plaintiff alleged that it had valid business relationships and expectancies, and defendant knew about them, without identifying specific relationships or expectancies that plaintiff had. Plaintiff only alleged the legal conclusion that the first two elements were satisfied, which is insufficient to state a claim. "A mere statement of a

pleader's conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 592; 683 NW2d 233 (2004).

Regarding the third element—intentional interference—"interference alone will not support a claim under this theory." *Hope Network Rehab Servs v Mich Catastrophic Claims Ass'n*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355372); slip op at 5. "A plaintiff 'must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.' " *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Knight Enterprises v RPF Oil Co*, 299 Mich App 275, 280; 829 NW2d 345 (2013). Absent a per se wrongful act, "a plaintiff must demonstrate that the defendant acted both intentionally and either improperly or without justification." *Dalley v Dykema Gossett*, 287 Mich App 296, 323; 788 NW2d 679 (2010). This requires identifying specific, affirmative acts to show malice or lack of justification. *Id*. at 324. "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *BPS Clinical Laboratories v Blue Cross & Blue Shield of Mich*, 217 Mich App 687, 699; 552 NW2d 919 (1996).

Although the count of tortious interference with a business expectancy in plaintiff's original complaint does not contain such an allegation, plaintiff made an allegation under its count of misappropriation of a trade secret that accuses defendant of "destroying, hiding, or taking all information relevant to the data transfer processes and materials . . . ." The allegation is somewhat unclear because it could be read as an allegation that defendant took information relating to the materials required for the data transfer process. However, considering the allegation in the light most favorable to plaintiff, it can reasonably be construed as accusing defendant of taking physical objects that belonged to plaintiff. The act of taking physical property belonging to plaintiff would be inherently wrongful and without justification under any circumstances. Therefore, plaintiff alleged a per se wrongful act, pleading the element.

However, plaintiff's main argument that it successfully pleaded the element of intentional interference on the basis of defendant's refusal to explain the process he developed lacks merit. Defendant's withholding of his personal knowledge was not an act that can support a claim of tortious interference with a business expectation. Defendant's refusal to explain his processes is not per se wrongful or an affirmative act that demonstrates malice because the act was lawful and defendant had a legitimate business reason for doing so. The parties were, and still are, in a dispute over whether the employment contract between the parties vested in plaintiff intellectual property rights to the knowledge gained by defendant. There are legal and factual questions regarding whether defendant's knowledge constitutes intellectual property and whether that knowledge was gained during a time at which defendant was contractually required to convey that knowledge to plaintiff.

This case is similar to *Dalley*, 287 Mich App at 324, in which the plaintiff alleged that the defendant filed a meritless lawsuit against the plaintiff for the purpose of interfering with the plaintiff's business relationships. This Court concluded that there was nothing "illegal, unethical, or fraudulent" about filing a lawsuit, even if the suit was "groundless." *Id*. In this case, defendant was under no obligation to acquiesce to plaintiff's legal conclusion about the provisions of the

employment contract between the parties. The interpretation of the contract and the parties' respective rights under the contract are questions of law for the court to decide. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). Following this Court's reasoning in *Dalley*, there is nothing illegal or fraudulent about defendant taking a legal position regarding the terms of the contract, even if defendant eventually loses on the merits of plaintiff's breach-of-contract claim.

Additionally, to plead the intentional interference element, plaintiff must show that defendant's actions were taken "for the purpose of invading the contractual rights or business relationship of another." *CMI Int'l, Inc*, 251 Mich App at 131. Although plaintiff alleged a per se wrongful act, plaintiff did not plead facts supporting defendant's intent to interfere with a business expectancy. Plaintiff's allegations are missing a link between defendant's taking of plaintiff's property and refusal to convey knowledge and an intent to harm a business expectancy. Accordingly, plaintiff did not adequately plead the element of intentional interference.

"With respect to the fourth element, a plaintiff pleading a claim of tortious interference with a business relationship or expectancy must show that, as a result of the interference, the plaintiff has suffered damages." *Hope Network Rehab Servs*, ___ Mich App at ___; slip op at 6. The business expectancy must be pleaded with specificity regarding the likelihood it would come to fruition and the damages that were caused by the interference. *PT Today, Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 150; 715 NW2d 398 (2006). The Supreme Court has explained that the "expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Cedroni Ass'n, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 492 Mich 40, 45; 821 NW2d 1 (2012). Plaintiff alleged that it had valid business relationships and expectancies that were terminated. However, plaintiff did not identify a relationship with any particular business partner or a particular expectancy that was terminated. Plaintiff did not address the likelihood that a missed expectancy would have come to fruition. Plaintiff also did not allege how a relationship or expectancy was terminated as a result defendant's wrongful conduct. Plaintiff did not successfully plead the element of damages. Accordingly, the trial court properly granted summary disposition in favor of defendant on plaintiff's claim of tortious interference with a business expectancy.

## C. MISAPPROPRIATION OF A TRADE SECRET

The protection of trade secrets is governed by the Uniform Trade Secrets Act (UTSA), MCL 445.1901 *et seq*. At the outset, the parties dispute whether there exists a trade secret belonging to plaintiff that is relevant to this case. MCL 445.1902 defines the term "trade secret":

> (d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:

> (*i*) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(*ii*) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  [MCL 445.1902(d)(*i*)-(*ii*).]

Plaintiff has pleaded the existence of a trade secret.  Plaintiff alleged that the intellectual property at issue involves a "technique and process," created by defendant at plaintiff's direction, for transferring data from one c-board to another.  Plaintiff alleged that defendant's withholding of the information regarding the process, which it was unable to recreate without defendant, has led to plaintiff's inability to fulfill customer requests and take on new business.  This shows that the process or technique provided economic value to plaintiff tied to a lack of knowledge of others and an inability to recreate it.  Further, plaintiff alleged that it took measures to protect the secrecy of the intellectual property by requiring defendant to sign a contract and agree to terms of employment that included confidentiality provisions.  There is nothing to suggest, at the pleading stage, that the confidentiality provisions were an insufficient effort to maintain secrecy.  Accordingly, plaintiff has properly pleaded the existence of a trade secret.

Next, a claim of misappropriation of a trade secret requires the acquisition of the secret by "improper means," which includes: "theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy or espionage through electronic or any other means."  MCL 445.1902(a)-(b).  Under MCL 445.1902(b), misappropriation of a trade secret occurs under either of the following circumstances:

(*i*) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

(*ii*) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

(A) Used improper means to acquire knowledge of the trade secret.

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

The statute, therefore, contains two possible ways to misappropriate a trade secret: improper acquisition of a trade secret and disclosure or use of a trade secret.

Regarding acquisition, plaintiff does not identify in its brief on appeal, nor did plaintiff identify in the trial court, which of the enumerated means plaintiff alleged defendant undertook to improperly acquire the trade secret.  Reviewing plaintiff's original complaint, there are only

-8-

allegations that could be construed as defendant improperly acquiring the trade secret through theft or breach of a duty to maintain secrecy.[4]

The UTSA does not define "theft." "When a term or phrase is not defined in a statute, courts may consult dictionary definitions to determine the plain and ordinary meaning of a word." *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 578; 609 NW2d 593 (2000), aff'd 463 Mich 652 (2001). Black's Law Dictionary defines "theft" as the "wrongful taking and removing of another's personal property with the intent of depriving the true owner of it." *Black's Law Dictionary* (11th ed). Plaintiff's original complaint alleged that defendant committed the acts of taking information and materials. Plaintiff also alleged that defendant refused to return the information. Thus, there are allegations that defendant took materials that were the personal property of plaintiff with an intent to deprive plaintiff of that property, supporting an allegation of theft. Plaintiff's allegations that defendant refused to document how his data transfer processes worked poses the question whether any tangible property containing a trade secret existed. However, that is not necessarily fatal to plaintiff's claim. Considering plaintiff accuses defendant of concealing from plaintiff the process defendant created and there is evidence that defendant actually took personal property belonging to plaintiff, further factual development could produce additional evidence that would make summary disposition improper under MCR 2.116(C)(8). *Maple Manor Rehab Ctr, LLC*, 333 Mich App at 162-163.

Plaintiff likewise pleaded that defendant acquired a trade secret through breach of a duty to maintain secrecy when it alleged that defendant maintained possession of materials that include a trade secret. The employment contract's confidentiality provision states that defendant shall not "retain or use Confidential Information for the benefit, purposes, or account of Employee . . . ." Upon leaving employment with plaintiff, defendant had the duty to "immediately destroy, delete, or return to the Company, at the Company's option, all originals and copies in any form or medium . . . that contain Confidential Information . . . ." According to plaintiff's allegations, defendant retained materials containing confidential information relating to a trade secret for his own account, and defendant failed to return those materials at plaintiff's request. Accordingly, plaintiff adequately pleaded that defendant breached the employment contract regarding his duties relating to the handling and retention of confidential information. Plaintiff stated a claim on which relief can be granted based on the acquisition of a trade secret through breach of a duty to maintain secrecy.

---

[4] The statute contains a grammatical error regarding its references to breach. The provision either erroneously includes an unnecessary "or" in its list of actions or, alternatively, lacks a necessary comma to offset the parenthetical phrase "or inducement of a breach of a duty to maintain secrecy." The provision is equally susceptible to either construction. It is arguable that MCL 445.1902(a) contains an ambiguity in that regard. A statute is ambiguous when it is equally susceptible to more than one meaning. *Vyletel-Rivard v Rivard*, 286 Mich App 13, 22; 777 NW2d 722 (2009). The ambiguity affects whether any breach of contract is an improper means of acquiring a trade secret or, on the other hand, only a breach relating to a duty to maintain secrecy is an improper means. Because we conclude defendant acquired a trade secret through breach of a contractual duty to maintain secrecy, we decline to address the issue.

However, plaintiff did not state a claim for misappropriation of a trade secret through the disclosure or use of the trade secret. Plaintiff did not allege any disclosure or use of the trade secret on the part of defendant that had already occurred. Plaintiff alleged that, upon information and belief, defendant intended to use or disseminate the information. In other words, plaintiff only alleged that defendant was likely to use or disclose proprietary information in the future. This Court has rejected the theory of "inevitable disclosure," in which a defendant's new employment would eventually lead to the new employer discovering the secret through the employee plying his trade. *CMI Int'l, Inc*, 251 Mich App at 132-133. This Court explained that a plaintiff "must establish more than the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets." *Id*. at 134. Accordingly, plaintiff did not sufficiently plead the disclosure or use of the trade secret to show that defendant misappropriated it in that manner.

Plaintiff also argues that it successfully pleaded a claim of common-law misappropriation of a trade secret. This argument lacks merit because, by its own terms, the UTSA supersedes any common-law remedy regarding the misappropriation of a trade secret. MCL 445.1908. Therefore, a common-law misappropriation of a trade secret claim is no longer available in Michigan. *CMI Int'l, Inc*, 251 Mich App at 132.

## D. UNJUST ENRICHMENT

In the absence of an enforceable contract, "the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194; 729 NW2d 898 (2006). "[U]nder the equitable doctrine of unjust enrichment, [a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 185; 504 NW2d 635 (1993) (quotation marks omitted). To establish a claim of unjust enrichment, a plaintiff must show "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). "Not all enrichment is unjust in nature, and the key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Id*. at 23. Further, a court "may not imply a contract if the parties have an express contract covering the same subject matter." *AFT Mich v Michigan*, 303 Mich App 651, 661; 846 NW2d 583 (2014).

Plaintiff adequately pleaded the elements of an unjust-enrichment claim. As discussed, plaintiff alleged that defendant improperly retained materials plaintiff provided to defendant, which provide an economic benefit to defendant. However, plaintiff cannot state a viable claim for unjust enrichment because the employment contract between the parties expressly covered the topics of intellectual property and proprietary information at issue in this case. The employment contract stated in relevant part:

6.2 Intellectual Property

(a) If Employee creates, invents, designs, develops, contributes to or improves any works of authorship, inventions, intellectual property, materials,

documents or other work product, either alone or with third parties, at any time during Employee's employment by the Company and within the scope of such employment and/or with the use of Company resources ("Company Works"), Employee shall promptly and fully disclose same to the Company and hereby irrevocably assigns, transfers and conveys to the maximum extent permitted by applicable law, all rights and intellectual property rights therein (including rights under patent industrial property, copyright, trademark, trade secret, unfair competition and related laws) to the Company to the extent ownership of any such rights does not vest originally in the Company.

(b) Employee shall take all requested actions and execute all requested documents (including any licenses or assignments required by a government contract) at the Company's expense (but without further remuneration) to assist the Company in validating, maintaining, protecting, enforcing, perfecting, recording, patenting or registering any of the Company's rights in the Company Works.

* * *

(d) Confidential Information and Company Works as defined herein shall not include any publicly available information or any information that Employee had or owned prior to employment with the Company or which was developed by Employee prior to the start date of Employee's employment with the Company or which was developed by Employee on his own time with his own tools and/or materials.

Plaintiff alleged that it conferred a benefit onto defendant by providing an opportunity for defendant to create a proprietary method related to repairing endoscopes and that defendant has been unjustly enriched by keeping that proprietary information to himself and not disclosing it to plaintiff. As laid out in the language quoted from the employment contract, any time defendant created intellectual property during the course of his employment with plaintiff, that property belongs to plaintiff and defendant must take all requested actions to help plaintiff maintain and protect the property. On the other hand, confidential information developed by defendant outside of work with his own resources, or before his employment, is owned by defendant. Upon de novo review of the contractual language, the express terms of the contract directly address the situation presented in this case. Although the parties dispute the facts and the proper application of the contract's terms, it cannot be said that there is not a contractual agreement regarding the dispute in this case. Further, on appeal, the parties agree that the employment contract was valid and defendant does not challenge the validity of the contract. Accordingly, the trial court did not err by granting summary disposition in favor of defendant on plaintiff's unjust-enrichment claim on the basis of the existence of a binding contract. *AFT Mich*, 303 Mich App at 661.

Plaintiff also argues that the trial court erred when it dismissed its unjust-enrichment claim because plaintiff would have stated a valid claim had the trial court determined that the employment contract between the parties was somehow invalid. Plaintiff is correct that it is allowed to plead conflicting theories of recovery. "In general, parties are permitted to plead inconsistent claims and facts in the alternative." *AFSCME Council 25 v Faust Pub Library*, 311 Mich App 449, 459; 875 NW2d 254 (2015). "Therefore, a breach-of-contract claim and an unjust-

enrichment claim may be brought in the alternative when there is some question of whether an express contract actually existed." *Elia Cos, LLC v Univ of Mich Regents*, 335 Mich App 439, 452; 966 NW2d 755 (2021), lv pending ___ Mich ___; 967 NW2d 237 (2021).

When granting a summary disposition motion brought pursuant to MCR 2.116(C)(8), the trial court is required to allow the plaintiff the opportunity to amend its complaint to cure the defects, unless any amendments would be futile. *Yudashkin v Linzmeyer (On Remand)*, 247 Mich App 642, 651; 637 NW2d 257 (2001). In this case, unlike amendment of the other three counts, any amendment to its unjust-enrichment claim would have been futile. The only suggestion made in the trial court that the employment contract may have been invalid was based on potential illegality on the part of plaintiff. In defendant's first motion for summary disposition, defendant argued that the employment contract between the parties was void on the basis of illegal consideration. In support of this argument, defendant relied upon its allegation that plaintiff's business practice of removing and changing serial numbers on c-boards was in violation of Michigan law, rendering the employment contract void. "If any part of such consideration is illegal, the entire consideration is void." *Kukla v Perry*, 361 Mich 311, 323; 105 NW2d 176 (1960).

Defendant correctly asserted that plaintiff would not have an equitable remedy available if the contract was void on the basis of illegality because plaintiff has unclean hands regarding the alleged illegal conduct. The doctrine of unclean hands is a "common-law maxim that operates to deny relief if the claim is based on the plaintiff's illegal conduct, a causal connection exists between that conduct and the damages sought, and the defendant is not more culpable than the plaintiff." *Varela v Spanski*, 329 Mich App 58, 83; 941 NW2d 60 (2019). The unclean hands doctrine also applies in suits in equity in which the plaintiff's wrongful conduct was directed at a nonparty to the suit. *McFerren v B & B Investment Group*, 253 Mich App 517, 524; 655 NW2d 779 (2002). The Supreme Court has explained that "any willful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fair-minded men, will be sufficient to make the hands of the applicant unclean." *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 466; 646 NW2d 455 (2002), quoting 3 Pomeroy's Equity Jurisprudence, § 891, pp 509-510. Accordingly, plaintiff cannot, as a matter of equity, rely on the theory abandoned by defendant that the employment contract was void on the basis of illegality. *McFerren*, 253 Mich App at 524. Plaintiff has not identified any other theory that would undermine the validity of the employment contract. Therefore, the trial court did not err when it granted summary disposition in favor of defendant on plaintiff's claim of unjust enrichment and dismissed the claim with prejudice.

In sum, the trial court properly granted summary disposition in favor of defendant on plaintiff's claims of tortious interference with a business expectancy and unjust enrichment in its original complaint, but erred when it granted summary disposition in favor of defendant on plaintiff's claims of breach of contract and misappropriation of a trade secret. Plaintiff, however, is not entitled to relief because the trial court properly allowed plaintiff to amend its pleadings on each claim except unjust enrichment, and any amendment of plaintiff's unjust-enrichment claim would have been futile.

IV. SUMMARY DISPOSITION OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff argues that the trial court erred when it granted summary disposition in favor of defendant on the claims it brought in its first amended complaint. We agree that the trial court erred by dismissing plaintiff's claims of breach of contract and misappropriation of a trade secret, but we disagree that the trial court erred by dismissing plaintiff's claim of tortious interference with a business expectancy. However, on remand, plaintiff shall be allowed to amend its complaint in regards to its allegation that defendant violated the contract's nondisparagement clause and its tortious interference claim.

## A. BREACH OF CONTRACT

Plaintiff argues that the trial court erred when it granted summary disposition in favor of defendant on its breach-of-contract claim and that plaintiff stated claims on which relief can be granted based on breach of the contract's confidentiality, nondisparagement, and noncompetition provisions. We agree that the trial court improperly granted summary disposition regarding the confidentiality and noncompetition provisions, but disagree that the trial court improperly granted summary disposition regarding the nondisparagement provision.

Again, the elements of a breach-of-contract claim are: "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis*, 495 Mich at 178. As previously discussed, plaintiff's original complaint stated a claim for breach of contract regarding defendant's failure to turn over to plaintiff confidential information. Turning to plaintiff's claim of breach of the parties' nondisparagement agreement, the contract states in pertinent part:

6.3 Nondisparagement

(a) Except as may be required by law or to enforce the terms of this Agreement, Employee will not make any oral or written statement to any third party (including but not limited to any current or prospective employee, customer, supplier, or vendor of the Company or any of its parents or subsidiaries) that disparages the company or any of its parent [SIC] or subsidiaries (collectively, the "Group") or any of the Group's past or present directors, officers, products, or services.

Plaintiff argues that defendant violated this nondisparagement provision by signing correspondence in the name of plaintiff's vice president to one of plaintiff's customers. The contract does not define the term "disparage." The terms of a contract are given their plain and ordinary meaning. *Total Quality, Inc*, 332 Mich App at 694. The term "disparage" has been defined as "(1) to depreciate by indirect means (such as invidious comparison): speak slightly about (2) to lower in rank or reputation: degrade." *Merriam-Webster's Collegiate Dictionary* (2003).

Plaintiff has pleaded the first two elements of its breach-of-contract claim regarding a violation of the employment contract's nondisparagement clause. Plaintiff identified defendant's duty to refrain from making written statements to one of plaintiff's customers that disparages one of plaintiff's officers. Plaintiff attached to its first amended complaint what appears to be correspondence exchanged via the website eBay between a company called endoparts and a

dissatisfied customer who suspected endoparts had engaged in fraud. Plaintiff alleges that defendant signed the correspondence in the name of plaintiff's vice president in an attempt to disparage plaintiff. The correspondence is not part of the pleadings because it does not conform to the definition of "pleading" under MCR 2.110(A). *Decker v Flood*, 248 Mich App 75, 80 n 4; 638 NW2d 163 (2001). Viewing the allegations in the light most favorable to plaintiff, plaintiff has pleaded that defendant breached the contract's nondisparagement clause. By signing correspondence in the name of one of plaintiff's officers, made a written statement. Implicating plaintiff into an allegation of fraud would have the tendency to depreciate, degrade, and lower the reputation of plaintiff, showing disparagement on the part of defendant. However, plaintiff has not pleaded the element of damages. "In a breach of contract case, the plaintiff must establish a causal link between the asserted breach of contract and the claimed damages." *Gorman v American Honda Motor Co*, 302 Mich App 113, 118-119; 839 NW2d 223 (2013). A defendant is only liable for damages that are the "direct, natural, and proximate result of the breach[.]" *Alan Custom Homes*, 256 Mich App at 512. On its face, plaintiff's first amended complaint does not allege any form of damages resulting from a breach of the contract's nondisparagement agreement and the loss of reputation to one of its officers. The first amended complaint only alleges damages flowing from defendant's alleged breach of the confidentiality and noncompetition provisions. Accordingly, plaintiff has not stated a claim for breach of contract under the nondisparagement clause.

Plaintiff next argues that his first amended complaint stated a claim for breach of contract regarding defendant's alleged violation of the contract's noncompetition agreement. Agreements not to compete are permissible as long as they are "reasonable." *Coates*, 276 Mich App at 506. This Court has explained that "a restrictive covenant must protect an employer's reasonable competitive business interests, but its protection in terms of duration, geographical scope, and the type of employment or line of business must be reasonable." *St Clair Med, PC*, 270 Mich App at 266. "Preventing the anticompetitive use of confidential information is a legitimate business interest." *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 158; 742 NW2d 409 (2007). "To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *St Clair Med, PC*, 270 Mich App at 266. The suppression of competition, on its own, is not permissible. *Id*. Although evaluating the reasonableness of a noncompetition agreement is "inherently fact-specific," reasonableness is a question of law when the facts are not in dispute. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016). "To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited." MCL 445.774a(1).

The noncompetition provision in the employment contract between the parties states, in pertinent part:

6.4 Restrictions

(a) Subject to Section 6.6 [severability clause] for purposes of this Agreement

-14-

(i) the term "participate" means to have any direct or indirect interest, whether as an officer, director, employee, partner, member, manager, sole proprietor, agent, representative, independent contractor, consultant, franchisor, franchisee, creditor, owner or otherwise, *provided, however*, that the term "participate" shall not include ownership of less than one (1%) percent of a class of stock of a publicly-held corporation . . .

(ii) the term "Restricted Business" means any enterprise, business or venture, which is engaged in or which proposes to engage in the manufacture, merchandising, distribution, service or sale of any products or goods of the same or substantially similar type or nature as, or are otherwise competitive with, those which are manufactured, merchandised, distributed, serviced or sold by the Company.

(iii) the term "Restricted Period" means the period of time from the Effective Date through the date that is twelve (12) months following the termination for any reason of Employee's employment relationship with any member of the Group or any successor thereto (whether pursuant to a written agreement or otherwise) except that the Restricted Period shall be extended for a period equal to any time period the Employee is in violation of this Section 6.4.

(iv) the term "Restricted Territory" means anywhere in the United States and/or any other geographic areas in which the Group conducts business at any time during the Employment Period.

(b) Employee will not, during the Restricted Period, anywhere in the Restricted Territory, participate in the Restricted Business.

* * *

(d) Employee will not, during the Restricted Period, anywhere in the Restricted Territory, directly or indirectly solicit or encourage any individual or entity that is, or was during the twelve (12) month period immediately prior to the termination of Employee's employment with the Company for any reason, a customer or vendor of the Group to terminate or otherwise alter his, her or its relationship with the Group.

Plaintiff alleged that defendant violated the noncompetition clause by purchasing parts from a "known supplier" and contacting customers of plaintiff. Plaintiff cannot support a breach-of-contract claim based on defendant's breaching the agreement by purchasing parts from one of plaintiff's suppliers. The Supreme Court has held that a restraint on trade is overly broad when it restricts a former employee from purchasing materials from one of the former employer's suppliers. *Hayes-Albion*, 421 Mich at 185. However, a prohibition on the solicitation of the former employer's customers by the former employee may be enforceable. *Total Quality, Inc*, 332 Mich App at 700. To the extent that plaintiff alleges that defendant's contacts with its customers violated the noncompetition clause, plaintiff has adequately alleged a breach of contract in that regard.

In sum, plaintiff has stated a claim on which relief can be granted for breach of the employment contract's confidentiality and noncompetition clauses. Although plaintiff has not adequately stated a claim for breach of the contract's nondisparagement clause, plaintiff should be allowed another chance to amend its complaint to properly plead the claim. Plaintiff did not file a motion to amend its complaint for a second time in the trial court. However, in its motion for reconsideration of the trial court's order granting summary disposition in favor of defendant, plaintiff requested that it be allowed to amend its complaint to correct the deficiencies identified by the court. In *Kincaid v Flint*, 311 Mich App 76, 94; 874 NW2d 193 (2015), this Court explained:

> Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons. Those reasons include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or futility. [Quotation marks and citation omitted.]

The trial court's order did not provide a reasoning for why an amendment to plaintiff's first amended complaint should not be allowed. It simply stated, "[a]gain, this Court agrees with Defendant finding that Plaintiff failed to correct *any* of the deficiencies previously outlined by this Court," without addressing why further amendment was not warranted. Rather than repeatedly failing to cure the deficiencies in its allegations, plaintiff was only given one opportunity to amend its complaint. If plaintiff did in fact suffer damages resulting from defendant's breach of the nondisparagement clause, plaintiff would seemingly be able allege those damages considering plaintiff has already been in contact with the individual to whom defendant allegedly disparaged plaintiff. The trial court erred when it granted summary disposition in favor of defendant on plaintiff's breach-of-contract claim.

## B. TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

Plaintiff argues that the trial court erred when it granted summary disposition in favor of defendant on its tortious interference with a business expectancy claim. We disagree, but conclude that the trial court erred by not allowing plaintiff an opportunity to amend its complaint on this claim.

Again, the elements of a claim of tortious interference with a business expectancy, as laid out in *Health Call of Detroit*, 268 Mich App at 90, are:

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

Plaintiff's original complaint only alleged that defendant interfered with its business expectancies by breaching his contractual duty to turn over to plaintiff the confidential information regarding the c-board data transfer process. In its first amended complaint, plaintiff included those

same allegations and did not meaningfully alter them. As previously discussed, plaintiff's allegations in its original complaint regarding defendant's retention of confidential information did not state a claim upon which relief could be granted. Accordingly, plaintiff has failed to successfully plead in its first amended complaint a claim for tortious interference based on breach of the confidentiality provision. However, plaintiff alleged two new theories of recovery in its first amended complaint.

Plaintiff's first amended complaint contained new allegations that defendant interfered with plaintiff's business expectancies by using confidential information while doing business with plaintiff's customers and suppliers in violation of the parties' noncompetition agreement. Regarding the element of intentional interference, the act of competing with a former employer, on its own, does not amount to intentional interference because participation in a market is a legitimate business purpose and is permissible. *BPS Clinical Laboratories*, 217 Mich App at 699. Further, in general, gaining a business advantage over a former employer does not amount to improper interference. *Knight Enterprises*, 299 Mich App at 282. However, the use of confidential information in those dealings does constitute intentional interference. *Hayes-Albion*, 421 Mich at 183-184. Therefore, plaintiff's allegation that it lost business because of defendant's use of plaintiff's confidential information properly pleaded the third element of its tortious interference with a business expectancy claim.

Plaintiff also alleged that defendant intentionally interfered with a business expectancy of plaintiff on the basis of its allegation defendant signed Haddad's name to correspondence with defendant's customer. This allegation likewise satisfies the element of intentional interference. Forgery can constitute a per se wrongful act because doing so is inherently wrongful and is never justified under any circumstance. *Knight Enterprises*, 299 Mich App at 280. Further, as plaintiff points out, "a false accusation may provide a basis for a tortious interference claim." *First Public Corp v Parfet*, 246 Mich App 182, 199; 631 NW2d 785 (2001), vacated in part on other grounds 468 Mich 101 (2003). Defendant's customer was accusing plaintiff of committing fraud. To implicate plaintiff's business into that accusation can reasonably be viewed as an attempt undermine trust in plaintiff's business practices with a customer that plaintiff also deals with and interfere with plaintiff's business expectancies. Accordingly, plaintiff's allegation of forgery also successfully pleads the third element of its claim.

Although plaintiff's new allegations plead the element of intentional interference, like its original allegations regarding the use of confidential information, plaintiff failed to adequately plead the element of damages. In a tortious interference with a business expectancy claim, it is not sufficient to make a conclusory allegation that a plaintiff suffered damages. *PT Today*, 270 Mich App at 150. A specific expectancy that would have been reasonably likely to come to fruition must be alleged. *Id*. Plaintiff identified a person it did business with by specifying the customer the forgery was submitted to, suggesting a business relationship and potential expectancies. However, plaintiff's first amended complaint still failed to allege a specific business expectancy that defendant interfered with that caused plaintiff to incur damages. Accordingly, plaintiff has not successfully pleaded a claim of tortious interference with a business expectancy.

That being said, plaintiff should be allowed to amend its complaint in regards to its tortious interference claim. Given that plaintiff's first amended complaint identified actions plaintiff may have taken to interfere with plaintiff's business expectancies and plaintiff was competing in the

endoscope repair market, there is a reasonable chance that plaintiff would be able to identify a business expectation it lost because of defendant's conduct. Also, plaintiff was never afforded a first chance to amend its complaint in relation to its new theories of recovery. Accordingly, the trial court erred when it granted summary disposition in favor of defendant on plaintiff's tortious interference with a business expectancy claim without allowing plaintiff another chance to amend its complaint.

## C. MISAPPROPRIATION OF A TRADE SECRET

Plaintiff argues that the trial court erred when it granted summary disposition in favor of defendant on plaintiff's claim of misappropriation of a trade secret. We agree.

To state a claim under the UTSA, a plaintiff must allege the existence of a trade secret and either the improper acquisition of a trade secret or the disclosure or use of a trade secret. MCL 445.1902. Plaintiff's first amended complaint again states a claim for the misappropriation of a trade secret through improper acquisition of the secret. Regarding the existence of a trade secret, plaintiff added additional allegations in its first amended complaint that concerned its confidentiality policies by reciting specific provisions in the employment contract that laid out defendant's duty to not retain or disclose confidential information. The new allegations in plaintiff's first amended complaint expand upon the allegations made in plaintiff's original complaint and do not undermine the allegations that were sufficiently pleaded in plaintiff's original complaint. Plaintiff did not meaningfully alter or add allegations regarding the acquisition of a trade secret. Accordingly, plaintiff's first amended complaint again states a claim for the misappropriation of a trade secret through the improper acquisition.

Plaintiff also included new allegations in its first amended complaint to state a claim of misappropriation of a trade secret through the disclosure or use of the trade secret. Plaintiff's original complaint failed to plead that theory of relief because plaintiff did not allege that disclosure or use had already occurred. However, plaintiff's first amended complaint alleges disclosure and use of the trade secret. Specifically, plaintiff alleges that "Defendant's activities in buying parts and soliciting services related to the trade secret process clearly establish the threat of misappropriation in violation of the Uniform Trade Secrets Act." There is a reasonable inference to be drawn in plaintiff's favor that, while dealing in endoscopy parts, defendant was using the trade secret he allegedly improperly acquired from plaintiff. Accordingly, plaintiff has stated a claim for the misappropriation of a trade secret through the disclosure or use of a trade secret. The trial court erred when it granted summary disposition in favor of defendant on plaintiff's claim of misappropriation of a trade secret.[5]

---

[5] Plaintiff's brief on appeal contains one fleeting reference that the trade secret misappropriated by defendant included the contact information of plaintiff's suppliers. Plaintiff made no such allegation in its first amended complaint. As previously discussed, the use of a former employer's suppliers cannot support a claim of misappropriation of a trade secret. *Hayes-Albion*, 421 Mich at 185. Additionally, plaintiff abandoned the issue by not articulating an argument. "A party abandons a claim when it fails to make a meaningful argument in support of its position." *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008).

V. DUE-PROCESS RIGHT TO BE HEARD

Plaintiff argues that the trial court violated its procedural due-process right to be heard when it granted summary disposition in favor of defendant without holding a hearing on defendant's summary disposition motion. We disagree.

Whether a party has been denied the right to due process is a constitutional question that this Court reviews de novo. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). "Whether a party has been afforded due process is a question of law." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). A trial court's decision whether to hold a hearing on a motion is reviewed by this Court for an abuse of discretion. *American Transmission, Inc v Channel 7 of Detroit*, 239 Mich App 695, 709; 609 NW2d 607 (2000). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). This Court reviews for plain error unpreserved claims of constitutional error. *In re VanDalen*, 293 Mich App at 135.

Both the United States and Michigan Constitutions contain guarantees that "a person may not be deprived of life, liberty, or property without due process of law." *In re Parole of Hill*, 298 Mich App 404, 412; 827 NW2d 407 (2012). Procedural due process provides "safeguards in proceedings that affect those rights protected by due process, such as life, liberty, or property." *Id.* "Due process is a flexible concept, the essence of which requires fundamental fairness. The basic requirements of due process in a civil case include notice of the proceeding and a meaningful opportunity to be heard." *Al-Maliki*, 286 Mich App at 485 (citation omitted). A party has been afforded constitutionally sufficient due process "when there is notice of the nature of the proceedings and a meaningful opportunity to be heard by an impartial decision maker." *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005).

Plaintiff argues that there was no summary disposition motion pending when the trial court entered its order granting summary disposition in favor of defendant. The assertion is not supported by the record. Plaintiff filed its original first amended complaint on February 2, 2021. Defendant then filed a motion for summary disposition in lieu of answering plaintiff's original first amended complaint. The trial court struck plaintiff's original first amended complaint because it did not comply with the court's previous order allowing plaintiff to file an amended complaint, and the trial court also entered another order stating it would not consider defendant's motion for summary disposition because it was moot. Plaintiff filed its revised first amended complaint on February 25, 2021. On March 15, 2021, defendant refiled its second motion for summary disposition in lieu of answering plaintiff's first amended complaint. Plaintiff filed a response to the motion on June 2, 2021. Although defendant concedes he never filed the praecipe and notice of hearing as ordered by the trial court causing there to not be a hearing on its second summary disposition motion, the register of actions shows there was no further action on defendant's second motion for summary disposition. There is nothing from the record to suggest that defendant's second motion for summary disposition was not pending when the trial court granted the motion.

The only authority plaintiff relies upon to support its position, besides the United States and Michigan Constitutions, is this Court's decision in *Al-Maliki*. In that case brought under the no-fault act, MCL 500.3101 *et seq.*, the defendant moved for summary disposition pursuant to

-19-

MCR 2.116(C)(10) arguing that the plaintiff could not succeed on a no-fault claim because the plaintiff had not suffered a serious impairment of a body function. *Al-Maliki*, 286 Mich App at 484. For the purposes of the defendant's motion, the defendant conceded the issue of causation. *Id*. at 486-487. At the hearing on the motion, however, the trial court raised the issue of causation sua sponte and granted the defendant's motion on that basis. *Id*. at 484. The trial court then repeatedly denied the plaintiff an opportunity to present evidence of causation after making that ruling. *Id*. at 488-489. This Court reversed the trial court's order, reasoning that by raising the issue sua sponte and refusing to hear the plaintiff's evidence, the trial court denied the plaintiff notice and a meaningful opportunity to be heard. *Id*. at 489.

The trial court did not abuse its discretion when it decided defendant's second motion for summary disposition without holding a hearing. This case is distinguishable from *Al-Maliki*. The trial court in this case did not raise a dispositive issue sua sponte and decide defendant's motion for summary disposition on the basis of an unbriefed issue. Although the trial court decided the motion at an unexpected time, it did so after giving plaintiff the opportunity to fully brief the issues. Generally, when a motion is contested, the motion shall be noticed for a hearing. MCR 2.119(E)(1). However, a trial court has the discretion to "dispense with or limit oral arguments on motions[.]" MCR 2.119(E)(3). A trial court is typically within its discretion to dispense with oral argument on a dispositive motion "where the trial court was fully apprised of the parties' positions, by way of the parties' briefs, before rendering a decision." *Fast Air, Inc v Knight*, 235 Mich App 541, 550; 599 NW2d 489 (1999). Additionally, "[i]f the pleadings show that a party is entitled to judgment as a matter of law . . . the court shall render judgment without delay." MCR 2.116(I)(1). In this case, the trial court was apprised of plaintiff's arguments in response to defendant's motion, which were made in its brief and were substantively the same as plaintiff's arguments in its brief responding to defendant's first summary disposition motion. It should also be noted that defendant moved a third time for summary disposition on June 16, 2021 under MCR 2.116(C)(10) only, and plaintiff never filed a response to that motion. The trial court's decision did not fall outside the range of reasonable and principled outcomes. Plaintiff's due-process rights were not violated because plaintiff had a fair opportunity to be heard. Accordingly, plaintiff is not entitled to relief on this issue.

## VI. CONCLUSION

The trial court properly granted summary disposition in favor of defendant on plaintiff's unjust-enrichment claim. The trial court erred when it granted summary disposition in favor of defendant on plaintiff's breach of contract, tortious interference with a business expectancy, and misappropriation of a trade secret. Plaintiff stated claims of breach of contract and misappropriation of a trade secret. Plaintiff failed to state a claim for tortious interference with a business expectancy. However, plaintiff shall be allowed to amend its complaint to cure the deficiencies in the pleadings on its breach-of-contract claim regarding the allegation that defendant violated the contract's nondisparagement clause and the deficiencies in its tortious interference with a business expectancy claim. Plaintiff is not entitled to relief based on the lack of a hearing on defendant's motion for summary disposition.

Affirmed in part, reversed in part, remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett