*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MIDWEST DEVELOPMENT PROJECTS, LLC, and GALENAS MICHIGAN, LLC,

        Plaintiffs/Counterdefendants-
        Appellees/Cross-Appellants,

v

ARACHNE TECHNOLOGIES, LLC, MICHAEL K. MCLEOD, and ULDAMAN, INC.,

        Defendants/Counterplaintiffs-
        Appellants/Cross-Appellees.

UNPUBLISHED
July 08, 2025
9:54 AM

No. 365718
Washtenaw Circuit Court
LC No. 19-000027-CK

Before: MARIANI, P.J., and MALDONADO and YOUNG, JJ.

PER CURIAM.

In this dispute involving a failed business purchase, defendants/counterplaintiffs-appellants/cross-appellees, Arachne Technologies, LLC, Michael K. McLeod, and Uldaman, Inc., appeal by right the trial court's order granting reconsideration and reversing its order denying a motion for summary disposition filed by plaintiffs/counterdefendants-appellees/cross-appellants, Midwest Development Projects, LLC, and Galenas Michigan, LLC. Plaintiffs cross-appeal the same order in which the trial court granted defendants' motion for reconsideration and reversed its order denying summary disposition to defendants on plaintiffs' complaint. We affirm.

## I. BACKGROUND

In December 2017, plaintiffs' president, Geoff Korff, began negotiating with defendants' owner and manager, McLeod, for plaintiffs' purchase of defendants' medical-marijuana companies. At that time, defendants intended to apply for a license to operate a medical-marijuana provisioning center under the Michigan Marihuana Facilities Licensing Act (MMFLA),

-1-

MCL 333.27101 *et seq.*[1]  To obtain the license, Emergency Rule 11 promulgated by the Michigan Department of Licensing and Regulatory Affairs (LARA) required applicants to show that they had liquid capital of at least $300,000 to operate and maintain their planned facility.[2]

Because defendants lacked sufficient liquid capital, in February 2018, plaintiffs and defendants signed a promissory note in which plaintiffs agreed to loan defendants $300,000 at an interest rate of 8%.[3]  Korff simultaneously signed a "Statement of Money Lender," which was a form provided by the Bureau of Medical Marijuana Regulation (BMMR) "to be used by persons lending money to an applicant for a marihuana facility state operating license to meet the capitalization requirements of Emergency Rule 11."  On the form, Korff stated that Midwest, as a creditor, loaned defendants $300,000 pursuant to a promissory note and that Midwest would not have an ownership interest in the marijuana facility.

In May 2018, the parties signed a nonbinding letter of intent to outline their objectives for plaintiffs to purchase defendants' business interests.  The letter of intent stated that, upon full payment of the price of the business, plaintiffs would assume 100% ownership of defendants' medical-marijuana provisioning center.  Although defendants were in the process of applying for a state license to operate the provisioning center, under the MMFLA, a licensee may not sell or otherwise transfer an interest in a licensed business without prior approval by the Medical Marihuana Licensing Board (MMLB).  See MCL 333.27406.  Further, in order to purchase an interest in a licensed medical-marijuana provisioning center, plaintiffs also had to be prequalified and ultimately licensed by the state.  See MCL 333.27206 and MCL 333.27402(1)(c).

---

[1] "Although the statutory provisions at issue refer to 'marihuana[,]' . . . by convention this Court uses the more common spelling 'marijuana' in its opinions." *People v Carruthers*, 301 Mich App 590, 593 n 1; 837 NW2d 16 (2013).  We follow that convention unless quoting or specifically referring to the statute.

[2] Pursuant to MCL 333.27206, LARA had the authority to issue rules for facilities to operate under the MMFLA.  Emergency Rule 11 set forth capitalization requirements and stated as follows when defendants applied for their license:

> (1) An applicant shall disclose the sources and total amount of capitalization to operate and maintain a proposed marihuana facility.
>
> (2) The total amounts of capitalization based on the type of marihuana facility specified in the application for a state operating license are as follows:
>
> * * *
>
> (e) Provisioning Center: $300,000.00[.]  [Department of Licensing and Regulatory Affairs, Bureau of Medical Marihuana Regulation, Medical Marihuana Facilities Licensing Act Emergency Rules, Emergency Rule 11, Filed with the Secretary of State on December 4, 2017.]

[3] The parties disagree about whether the promissory note contained a provision that would allow plaintiffs to convert unpaid principal into equity shares in defendants' marijuana provisioning center.

The letter of intent stated that, when plaintiffs received their license to operate a medical-marijuana provisioning center, the parties would execute a purchase agreement for the complete sale of defendants' businesses to plaintiffs. The letter further stated that plaintiffs would provide a $300,000 line of credit to defendants to support their license application and would pay ongoing operational expenses, as well as "transitional" expenses, including license application and regulatory fees. The letter of intent stated that the transitional expenses would be drawn from the $300,000 line of credit, repayment of defendants' operational expenses would be plaintiffs' responsibility, and the parties would mutually approve transitional expenses "on an ongoing basis."

The letter of intent further provided that the parties would enter a purchase agreement within 60 days; that, once signed, plaintiffs would deposit $800,000 into a trust account; and that plaintiffs would then apply for "preauthorization" under the MMFLA. According to the letter of intent, when plaintiffs received their final state license, they would place an additional $850,000 in a trust account until Michigan and Ann Arbor approved the ownership transfer. The letter of intent also stated that it included the parties' "general understandings," but that the letter was only an expression of the parties' intents and was not "legally binding or enforceable against either party."

Over subsequent weeks, plaintiffs maintained an account with $300,000 that defendants needed for the MMFLA application; however, plaintiffs used funds from the account, and its balance fell below $300,000 at different times. McLeod sent an e-mail to Korff in July 2018, stating that the parties needed to "move forward" and asking if Korff had a draft purchase agreement. Korff responded that he needed to find a new attorney, but he sent McLeod a draft "Business Transfer Agreement" and stated that McLeod's attorney could send comments about the draft directly back to Korff.

On August 14, 2018, McLeod sent an e-mail to Korff stating that the BMMR planned to approve or deny defendants' license application at its next meeting on September 10, 2018, if the parties could respond to the BMMR's questions by August 17, 2018. McLeod asked Korff to provide monthly bank statements to show that the account maintained a continuing balance of at least $300,000. McLeod also asked Korff to deposit $800,000 into a trust account, as agreed in the letter of intent. He also asked Korff to reimburse transitional expenses, for which McLeod provided receipts. McLeod stated that he would send comments on the draft business transfer agreement "as soon as we catch up on the licensing issues."

McLeod's attorney, Dennis Hayes, expressed various concerns to McLeod about the draft business transfer agreement, and he sent a highlighted copy and comments to McLeod on August 21, 2018. Among other problems, the draft agreement lacked specific information about items that plaintiffs wanted to offset from the purchase price, and the schedules referred to in the agreement contained no information. On August 29, 2018, Korff e-mailed additional draft documents for McLeod to review with Hayes, including a loan and option agreement, a promissory note, and a draft management agreement, which would allow plaintiffs to take over the management of defendants' business on September 1, 2018.

The MMLB approved defendants' provisioning-center license on September 10, 2018, and, on September 13, 2018, the BMMR sent McLeod an invoice for $48,000 for the "Medical

Marihuana Regulatory Fee" that was due in 10 days. According to defendants, Korff initially agreed but later declined to advance McLeod money for the regulatory fee. Korff then demanded that McLeod sign the new promissory note, loan and option agreement, and the management agreement. Korff declined to pay for McLeod's incurred operational expenses.

Thereafter, the parties ended their negotiations through a series of e-mails beginning on September 25, 2018. On that date, McLeod sent an e-mail to Korff stating that they were not able to negotiate a revised letter of intent, he would not sign an "undelivered" modified letter of intent, he reviewed the draft agreements that Korff had sent and concluded that they were "irrelevant," and he did not "believe any further negotiation would be productive." Three hours later, Korff responded and stated that plaintiffs had acted in good faith by assisting defendants to obtain their MMFLA license, but defendants' decision "to string [plaintiffs] along through [defendants'] approval process shows a high degree of bad faith, and frankly, we've been defrauded." Korff further stated that he assumed that defendants had another purchase offer. Korff went on to state that, unless defendants agreed to move forward with the purchase within 48 hours, plaintiffs would notify LARA and the MMLB that defendants defrauded them, and they would file a complaint in Washtenaw Circuit Court, which would likely include a claim, among others, for "fraudulent inducement to a contract." McLeod repeatedly responded that he needed to talk to his attorney, and, on October 5, 2018, Korff told McLeod that they planned to report defendants to LARA and the BMMR that day and would also begin the process of filing a lawsuit.

In January 2019, plaintiffs filed a complaint against defendants alleging claims for breach of contract, specific performance, fraud and fraud in the inducement, intentional misrepresentation, negligent misrepresentation, innocent misrepresentation, silent fraud, promissory estoppel, tortious interference with a contractual or business relationship, and unjust enrichment. The MMLB approved plaintiffs for "prequalification status" to own a medical-marijuana provisioning center on March 21, 2019. Thereafter, defendants counterclaimed against plaintiffs. Relevant to this appeal, defendants alleged that plaintiffs' lawsuit and demand for specific performance amounted to tortious interference with a contract or business relationship because plaintiffs filed the lawsuit to interfere with defendants' agreement to sell their business to another purchaser, MedMen Enterprises, Inc.

The case remained pending for more than four years, during which time three judges presided over the case, the parties made various attempts to settle their claims, the parties repeatedly moved for summary disposition, and defendants repeatedly moved for dismissal of plaintiffs' complaint for plaintiffs' failure to respond to any of defendants' discovery requests.

After the trial court denied the parties' most recent motions for summary disposition on their own claims and plaintiffs' motion for summary disposition on defendants' counterclaim of tortious interference, both parties moved for reconsideration. The trial court then granted the motions for reconsideration, granted summary disposition to defendants on plaintiffs' complaint, granted summary disposition to plaintiffs on defendants' counterclaim of tortious interference with a business relationship, and denied defendants' motion for costs and attorney fees for filing a frivolous complaint. This appeal and cross-appeal followed.

## II. DISCUSSION

## A. OFFER OF JUDGMENT

Defendants argue that the trial court erred by denying their motion for costs and fees because plaintiffs declined their offer of judgment. We determine that defendants abandoned this issue by failing to properly present it on appeal.

The totality of defendants' argument on this issue is that, contrary to the trial court's ruling, defendants' offer of judgment was for a sum certain under MCR 2.405. An appellant must argue the merits of the issues raised on appeal. *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 414; 809 NW2d 669 (2011). Further, an appellant may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). Nor may an appellant give an issue cursory treatment with little or no citation of supporting authority. *Id*. A party also may not leave it to this Court to search for the factual basis to sustain or reject its position, but must support factual statements with specific references to the record. *Begin v Mich Bell Tel Co*, 284 Mich App 581, 590; 773 NW2d 271 (2009), overruled in part on other grounds *Admire v Auto-Owners Ins Co*, 494 Mich 10; 831 NW2d 849 (2013). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008).

On the basis of these principles, we conclude that defendants abandoned this issue by giving it cursory treatment and failing to offer any legal or factual analysis of their position.

Moreover, we disagree with the merits of defendants' argument. In May 2022, defendants filed an offer of judgment and stated that, for $2,180,000, defendants would sell plaintiffs their medical-marijuana provisioning center license and enter judgment in plaintiffs' favor on their claim for specific performance. Plaintiffs did not respond to defendants' offer, and, in July 2022, the trial court granted summary disposition to defendants on plaintiffs' breach-of-contract and specific-performance claims.

In August 2022, defendants moved for costs and fees on the grounds that plaintiffs rejected their offer of judgment and that defendants received a more favorable verdict within the meaning of MCR 2.405(D)(1). Defendants asked the trial court to order plaintiffs to pay $72,213.08 for costs and reasonable attorney fees caused by plaintiffs' rejection of the offer of judgment. Plaintiffs filed a response to defendants' motion in December 2022 and, in relevant part, argued that defendants' offer did not constitute an offer of judgment within the meaning of MCR 2.405(A). The trial court agreed with plaintiffs and denied defendants' motion in an opinion and order entered on February 13, 2023.

"This Court reviews a trial court's decision to award sanctions under MCR 2.405 for an abuse of discretion." *JC Bldg Corp II v Parkhurst Homes, Inc*, 217 Mich App 421, 426; 552 NW2d 466 (1996). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Carlsen Estate v Southwestern Mich Emergency Servs, PC*, 338 Mich App 678, 693; 980 NW2d 785 (2021) (quotation marks and citation omitted).

-5-

MCR 2.405 applies to offers to stipulate to entry of judgment and is intended to encourage parties to settle disputes and to prevent protracted litigation. *Simcor Constr, Inc v Trupp*, 322 Mich App 508, 514-515; 912 NW2d 216, (2018). In this case, the trial court ruled that defendants' offer did not comply with MCR 2.405(A)(1), which provides as follows:

> "Offer" means a written notification to an adverse party of the offeror's willingness to stipulate to the entry of a judgment in a sum certain, which is deemed to include all costs and interest then accrued. If a party has made more than one offer, the most recent offer controls for the purposes of this rule.

The term "sum certain" means a fixed or exact amount. *Central Cartage Co v Fewless*, 232 Mich App 517, 530-532; 591 NW2d 422 (1998).

The trial court cited the plurality opinion in *Knue v Smith*, 478 Mich 88; 731 NW2d 686 (2007) to support its denial of defendants' request for costs. *Knue* involved an action to quiet title and, in an attempt to invoke the offer-of-judgment rule, the plaintiffs offered the defendants $3,000 for a quitclaim deed to the disputed property. *Id*. at 90. On appeal, this Court ruled that the plaintiffs made an offer of a sum certain—$3,000—but our Supreme Court reversed. *Id*. at 90-97. In the lead opinion, Chief Justice TAYLOR ruled that the plaintiffs' offer of a quitclaim deed in exchange for $3,000 and a judgment of dismissal was not an offer of judgment for a sum certain. *Id*. at 93 (opinion by TAYLOR, C.J.). Rather, the offer was a payment in exchange for a recordable real estate document, which was a transaction to which MCR 2.405 did not apply. *Id*. at 93-94. Justice YOUNG, joined by Justice WEAVER, echoed the lead opinion, stating that because "plaintiffs' offer required a quit claim deed in addition to the transfer of $3,000, the offer could not be for a sum certain. Therefore, MCR 2.405 does not apply to this case." *Id*. at 97 (YOUNG, J., concurring).

Applying the reasoning in *Knue*, if defendants offered to stipulate to the entry of judgment in plaintiffs' favor for $2,180,000, it would fall within MCR 2.405(A)(1) as an offer of judgment. Instead, defendants offered to sell their medical-marijuana license to plaintiffs for $2,180,000, which is an offer to exchange a license for money. Defendants' offer was similar to the impermissible offer in *Knue*—an offer of money in exchange for a deed. Under the circumstances, the offer of judgment would culminate in the sale of a business, including a medical-marijuana provisioning center license, which is something other than a judgment for a sum certain. Under *Knue* and the plain language of MCR 2.405(A)(1), the offer-of-judgment rule did not apply to the offer made by defendants, and, as the trial court correctly ruled, defendants were not entitled to costs and fees under the offer-of-judgment rule.

B. TORTIOUS INTERFERENCE WITH A CONTRACT OR BUSINESS EXPECTANCY

Defendants next argue that the trial court erred by granting plaintiffs' motion for reconsideration of its order denying plaintiffs' motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) on defendants' tortious-interference claim. Again, we disagree.

We review a trial court's ruling on a motion for reconsideration for an abuse of discretion. *Shenandoah Ridge Condo Ass'n v Bodary*, ___ Mich App ___, ___; ___ NW3d ___ (2025)

(Docket No. 364972); slip op at 6. A trial court abuses its discretion when its decision resulted in an outcome falling outside the range of principled outcomes. *Carlsen Estate*, 338 Mich App at 693. This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

As our Supreme Court explained in *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019):

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted).

In this case, MedMen made an informal offer to purchase defendants' marijuana provisioning center in September 2018. Between September 2018 and July 2019, defendants entered into various agreements with MedMen regarding that potential purchase. Plaintiffs argued in their motion for summary disposition that defendants could not establish a claim of tortious interference with a contract or business expectancy because no evidence showed that plaintiffs knew about defendants' contract or business relationship with MedMen until after plaintiffs filed their complaint in January 2019. That is, defendants did not disclose to plaintiffs that they had an agreement with MedMen until defendants disclosed the identity of MedMen in their answers to interrogatories in December 2019.

The trial court denied plaintiffs' motion for summary disposition because it ruled that a jury could conclude that plaintiffs filed the lawsuit and requested specific performance in an effort to interfere with defendants' sale of the marijuana provisioning center to MedMen. In so holding, the trial court apparently agreed with defendants' evidence showing that plaintiffs knew about MedMen as early as October 2018 when Korff reported to the BMMR that defendants defrauded plaintiffs by using them to show they had $300,000 in liquid capital, but then made an agreement with another buyer.

Plaintiffs moved for reconsideration of the order denying their motion for summary disposition under MCR 2.119(F). On reconsideration, the trial court granted plaintiffs' motion for summary disposition on the basis that plaintiffs' filing of a lawsuit against defendants was not enough to establish a claim of tortious interference.

In *BPS Clinical Laboratories v Blue Cross & Blue Shield of Mich (On Remand)*, 217 Mich App 687, 698-699; 552 NW2d 919 (1996), this Court summarized the elements of tortious interference as follows:

-7-

The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff.

The party alleging tortious interference must allege the "intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002) (quotation marks and citation omitted).

Defendants' claim of tortious interference did not involve a per se wrongful act, but defendants maintained that plaintiffs filed their lawsuit with malice and that the lawsuit was unjustified in law. Under this theory, defendants had to show specific, affirmative conduct to establish that plaintiffs acted with an unlawful purpose to interfere with the contract or expectancy. See *id*. Moreover, "in order to succeed under a claim of tortious interference with a business relationship, the plaintiffs must allege that the interferer did something illegal, unethical or fraudulent." *Early Detection Ctr, PC v New York Life Ins Co*, 157 Mich App 618, 631; 403 NW2d 830 (1986). As the trial court in this case correctly noted, simply filing a lawsuit, whether groundless or not, does not meet any of these criteria. *Id*. Moreover, when "the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *BPS*, 217 Mich App at 699.

In this case, although plaintiffs did not prevail in their lawsuit, the record reflects that Korff filed the lawsuit for a legitimate business reason. Korff believed that defendants should have fulfilled their written and oral agreements to sell their business interests to plaintiffs and that defendants received consideration from plaintiffs but failed to consummate the sale as agreed. Additionally, when plaintiffs filed the lawsuit and requested specific performance, defendants' medical-marijuana provisioning center license was valuable, and, 10 months after they filed the complaint, plaintiffs' counsel stated that, despite the litigation, plaintiffs still wanted to buy the business.

Moreover, defendants presented insufficient evidence to establish a genuine issue of material fact that plaintiffs knew about defendants' contract or relationship with MedMen. Although the complaint and the BMMR investigation report suggested that plaintiffs suspected that defendants made an agreement with another buyer, the first evidence that plaintiffs actually learned about the identity of MedMen and the nature of its relationship or agreement with defendants was when defendants responded to plaintiffs' interrogatories in December 2019, nearly a year after plaintiffs had already filed their lawsuit.

Ultimately, then, defendants did not present evidence that plaintiffs acted fraudulently and with malice or that they initiated or litigated this case with an intent to interfere with defendants' contract, expectancy, or business relationship with MedMen. For those reasons, the trial court's ruling did not fall outside the range of principled outcomes. See *Carlsen Estate*, 338 Mich App at 693.

## C. SANCTIONS FOR FILING A FRIVOLOUS LAWSUIT

We also disagree with defendants' claim that the trial court erred by denying their request for sanctions under MCL 600.2591.

This Court reviews a trial court's ultimate decision to grant or deny sanctions for submitting a frivolous filing for an abuse of discretion. *Hairston v Josh LKU*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363030); slip op at 10-11. As noted, an abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. at 11. This Court reviews for clear error a trial court's findings underlying its decision to award sanctions for filing a frivolous claim. *Id*. A finding is clearly erroneous if, after reviewing the record, this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*.

After the trial court granted defendants' motion for reconsideration of its order denying their motion for summary disposition on plaintiffs' remaining claims of intentional, negligent, and innocent misrepresentation, promissory estoppel and unjust enrichment, defendants moved for costs and fees pursuant to MCL 600.2591, which provides for fees and costs if an action is frivolous. As stated in MCL 600.2591(3)(a), an action is "frivolous" if it meets one of these conditions:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit.
>
> (b) "Prevailing party" means a party who wins on the entire record.

As this Court explained in *Hairston*, ___ Mich App at ___; slip op at 11:

> A filing or claim is frivolous when the party filing the claim or initiating the action has no reasonable basis to believe that the facts underlying its position are true or the party's legal position is devoid of arguable legal merit. See MCL 600.2591(3)(a)(*ii*) and (*iii*); MCR 1.109(E)(5)(b). Such a filing is also frivolous when it was interposed for an improper purpose, even if the action is otherwise supported by facts and law. See MCL 600.2591(3)(a)(i); MCR 1.109(E)(5)(c); see also *New Covert Generating Co, LLC v Covert Twp*, 334 Mich App 24, 96-97; 964 NW2d 378 (2020) (noting that the trial court can sanction a party for a filing that was not supported by the law or that was imposed for an improper purpose).

The trial court did not err when it ruled that plaintiffs' complaint was not frivolous. Plaintiffs expressed an interest in buying defendants' business under the terms that they discussed at the beginning of the case and after it remained pending for several months. Defendants filed

numerous motions for summary disposition throughout the proceedings, and the trial court found grounds to deny them. At various times, the trial court found that genuine issues of material fact supported plaintiffs' claims.

Defendants' argument that plaintiffs' claim for specific performance was "illegal" is not persuasive. Although plaintiffs did not receive prequalification approval from the BMMR until March 2019, the parties anticipated in the letter of intent that the sale would occur in compliance with the MMFLA and any applicable rules. Further, although the letter of intent stated that it was not a binding agreement, plaintiffs argued that, in addition to the provisions set forth in the letter of intent, the parties made various oral promises to abide by its terms. If plaintiffs believed that defendants breached oral and written agreements to sell the business to plaintiffs once defendants obtained their provisioning-center license, then it was not frivolous for plaintiffs to pursue a claim for breach of contract. Plaintiffs further alleged claims of fraud and misrepresentation because they believed that defendants were negotiating with other potential buyers while continuing to ask plaintiffs to pay for and otherwise support their license application under the terms of the letter of intent. Moreover, as previously discussed, defendants did not present evidence to show that plaintiffs pursued legal and equitable remedies against defendants for malicious or fraudulent reasons.

Our review of the record does not leave us with a definite and firm conviction that the trial court made a mistake when it found that plaintiffs did not file a frivolous complaint, and, therefore, the trial court did not abuse its discretion by denying defendants' motion for sanctions under MCL 600.2591. See *Hairston*, ___ Mich App at ___; slip op at 10-11.

## D. PLAINTIFFS' CROSS-APPEAL

Plaintiffs' statement of question presented for their cross-appeal is limited to their claim that the trial court erred by granting defendants' motion for reconsideration. The trial court's grant of defendants' motion for reconsideration effectively reversed its denial of defendants' motion for summary disposition on plaintiffs' remaining claims, which, at that juncture, only included plaintiffs' claims for intentional, negligent, and innocent misrepresentation; promissory estoppel; and unjust enrichment. But the only issue that plaintiffs discuss at any length in their brief on appeal relates to their claim for breach of contract. The trial court granted summary disposition on that claim eight months before the trial court ruled on the motions for reconsideration, and breach of contract was not raised as part of those motions.

Although an appellant in an appeal as of right from a final order may raise issues relating to prior orders, *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009), plaintiffs did not include in their statement of questions presented any claim about the trial court's July 2022 order granting summary disposition on their breach-of-contract claim. Generally, this Court will not consider an issue if it was not set forth in the statement of questions presented. *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000).

The appellant has the burden to demonstrate that the trial court erred. *Redmond v Heller*, 332 Mich App 415, 435 n 9; 957 NW2d 357 (2020). If the appellant fails to persuade this Court that the trial court made a mistake, then this Court will not overturn a trial court's decision. *Beason v Beason*, 435 Mich 791, 804; 460 NW2d 207 (1990). Moreover, if the appellant fails to address

the trial court's actual decision and offer a legal analysis of how the trial court erred, then this Court deems the issue abandoned. *Redmond*, 332 Mich App at 449.

In addition to their failure to include their breach-of-contract claim in their statement of question presented, plaintiffs, while repeating the argument they offered below, do not engage with the trial court's ruling or specify how it was erroneous, and they cite no legal authority to persuade us that the trial court should have ruled otherwise. See *id*. For these reasons, plaintiffs have abandoned this claim.

Plaintiffs make a cursory argument that the trial court should not have summarily dismissed their other claims, including fraud, fraud in the inducement, intentional misrepresentation, negligent misrepresentation, innocent misrepresentation, silent fraud, promissory estoppel, tortious interference with contractual and/or business relationship, and unjust enrichment. But plaintiffs merely assert that there remained a question of fact about whether defendants' conduct amounted to fraud. An appellant may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim. *Bronson Methodist Hosp*, 298 Mich App at 199. We deem plaintiffs' argument abandoned for failure to address the trial court's rulings, failure to articulate a claim of error, and failure to cite factual and legal support for their claims.

We further note that the trial court dismissed plaintiffs' fraud claims for failure to plead the claims with particularity after it ordered plaintiffs to file an amended complaint. Because plaintiffs never pleaded or proved their claims of fraud, their assertion that "fraud" established all but one of their claims in the trial court is unavailing. See *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 229-230; 859 NW2d 723 (2014).

Affirmed.

/s/ Philip P. Mariani
/s/ Allie Greenleaf Maldonado
/s/ Adrienne N. Young